**Ex parte Johnny Ray MORRIS.**

**No. 66003.**

Court of Criminal Appeals of Texas,
En Banc.

Jan. 20, 1982.

Robert Huttash, State's Atty., and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION ON STATE'S MOTION FOR REHEARING

TEAGUE, Judge.

Our prior opinion is withdrawn.

This is a post-conviction application for writ of habeas corpus that is before this Court pursuant to Art. 11.07, V.A.C.C.P.

The facts show the following:

On November 29, 1977, applicant was committed to the Texas Department of Corrections, hereinafter referred to as T.D.C., after having been convicted in the trial court of the offense of burglary of a habitation with intent to commit theft and receiving a five year sentence, which sentence was to commence on November 25, 1977.

After the applicant was received by T.D.C., an "Inmate Tracking System Commitment Date Form," concerning the applicant, was completed by officials or employees of T.D.C. There is nothing in the record to show that the applicant had anything whatsoever to do with the completion of this form. However, officials or employees of T.D.C. erroneously had the form reflect that applicant's sentence commenced on November 25, 1975; not November 25, 1977, as it should have. The date entered on the form thereafter became extremely important as it governed when the applicant was to be released from confinement in T.D.C. Art. 42.12, Sec. 15(c), V.A.C.C.P., provides in part:

A prisoner who is not on parole, except a person under sentence of death, shall be released to mandatory supervision by order of the Board *when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced.* A prisoner released to mandatory supervision shall, upon release, be deemed as if released on parole.* (Emphasis added.)

Because of the above clerical error, the Board of Pardons and Paroles of Texas, acting pursuant to Art. 42.12, Sec. 15(c), *Id.*, prematurely ordered applicant released to parole in the form of mandatory supervision. On December 29, 1978, pursuant to the Board's order, applicant was in fact released from confinement in T.D.C.

Thereafter, while applicant was at liberty he violated a condition of his parole in the form of mandatory supervision; by leaving Texas without permission. He was arrest-

ed on December 28, 1979, and subsequently reincarcerated in T.D.C. on January 24, 1980. The "Inmate Tracking System Commitment Date Form" in the record shows that after applicant was returned to T.D.C. on January 24, 1980, it was ordered that all of the good conduct time credit applicant had accrued, from the original date of his confinement in T.D.C. to the date of his release on parole in the form of mandatory supervision, was forfeited. Applicant also was not to be given any calendar time credit for the period he was at liberty and on parole in the form of mandatory supervision. See V.A.C.S. Art. 6181–1, Sec. 4.

Applicant initially contends that because he was erroneously released from confinement on December 29, 1978, through no fault on his part, he is entitled to calendar time credit from December 29, 1978, to January 24, 1980, the date of his reincarceration in T.D.C. Applicant also contends that the forfeiture of any good conduct time credit he had accumulated from December 6, 1977, the date he was originally confined in T.D.C., to December 29, 1978, the date he was released on parole in the form of mandatory supervision, should be set aside.

We will first discuss applicant's complaint concerning his entitlement to calendar time credit, and will then discuss his complaint concerning his entitlement to good conduct time credit.

This Court in several recently decided cases has held that an inmate who should not have been but was released from confinement was entitled to credit on a sentence for the time he was at liberty. See, *Ex parte Hurd*, 613 S.W.2d 742 (1981); *Ex parte Tarlton*, 582 S.W.2d 155 (1979); *Ex parte Esquivel*, 531 S.W.2d 339 (1976). A strong underlying factor that was apparently considered by the Court in reaching its holding in each case cited was the fact that the inmate's release from confinement occurred without fault on the part of the inmate.

* For purposes of this opinion, we characterize this type parole as "parole in the form of mandatory supervision."

In deciding each of applicant's contentions, we find that it is necessary for us to reconsider the often stated rule that "absent an escape, a violation of parole or some fault on the part of the prisoner, a sentence must be continuous and a prisoner cannot be required to serve his sentence in installments." *Ex parte Hurd*, Id., at p. 744. For reasons hereinafter stated, we find that the rule should be reworded to read: A sentence must be continuous and a prisoner or inmate cannot be required to serve his sentence in installments, unless it is shown that a premature or unlawful release of the prisoner or inmate resulted or occurred through some fault on the part of the prisoner or inmate.

*Ex parte Morgan*, 159 Tex.Cr.R. 241, 262 S.W.2d 728 (1953), informs us of some of the reasons for the rule as it was previously worded:

> ... (1) It would require one who had requested no relief, but who had been told to leave his place of confinement by those who confined him, to refuse to leave and demand that he be allowed to finish serving his sentence at that time in order to ever be free from the clutches of the law. Such conduct on the part of a prisoner would be inconsistent with human nature as we know it. (2) It would place in the hands of those charged with enforcing the law the power to keep a prisoner in a form of peonage by requiring him to serve his sentence at whatever times and for such length of time as the whim of the officer might dictate.

Eligibility for parole in the form of mandatory supervision, as provided by Art. 42.-12, Sec. 15(c), *supra*, occurs once the "Inmate Tracking System Commitment Date Form" reflects that the total of the inmate's calendar time credit and good conduct time credit equals the number of years the inmate was sentenced to serve. The statute requires that as soon as the inmate becomes eligible for release on parole in the form of mandatory supervision he is automatically ordered released by the Board of Pardons and Paroles. Because of the above clerical error on the part of officials or employees of T.D.C., this caused the Board to prematurely order applicant's release from confinement to parole in the form of mandatory supervision.

In *Ex parte Griffin*, 158 Tex.Cr.R. 570, 258 S.W.2d 324, 325 (1953), this Court answered the following question in the affirmative. "Whether [Griffin] was entitled to be credited for the time he was at liberty under [his] parole [sic] notwithstanding the fact that under the holding in [*Ex parte Hayden*, 152 Tex.Cr.R. 517, 215 S.W.2d 620 (1948)], the trial court was not legally authorized to grant the parole [sic]." The facts in *Griffin* show that the trial court acted without lawful authority when he placed the defendant on probation. During the period that the defendant was on the unlawful probation, he obeyed the conditions of the probation imposed, and successfully served out the term of his illegal probation. It is apparent from a close reading of *Griffin* that the underlying reason why this Court ruled that the defendant was entitled to be credited upon his jail term for the time he was at liberty was because he had been erroneously released from confinement through no fault of his.

Like the prisoner in *Griffin*, the inmates in *Esquivel, Tarlton,* and *Hurd,* supra, should not have been released from confinement when they were released. Nevertheless, this Court in each case granted each inmate credit on a sentence for the time he was at liberty. However, in all of the cases, the release of the inmate or prisoner occurred through no fault on the part of the inmate or prisoner.

Thus, there are present in the above cases two underlying common factors: (1) the prisoner or inmate should not have been released *and* (2) the prisoner or inmate was released without any fault on his part.

Today, we synthesize the controlling factors found in the above cases and re-word the former rule to read: A sentence must be continuous and a prisoner or inmate cannot be required to serve his sentence in installments, unless it is shown that a premature or unlawful release of the prisoner or inmate resulted or occurred through

some fault on the part of the prisoner or inmate.

■ As there is no showing in this cause that applicant was released because of any fault on his part, we hold that he is entitled to be granted credit on his formal sentence for the calendar time when he was at liberty on parole in the form of mandatory supervision, i.e., from December 29, 1978, until January 24, 1980.

■ We next discuss applicant's contention regarding his claim that he is entitled to the good conduct time credit he had accumulated prior to December 29, 1978, the date he was released from T.D.C. and placed on parole in the form of mandatory supervision by the Board of Pardons and Paroles. We agree with the applicant's contention.

To uphold the forfeiture of applicant's good conduct time credit that he had accumulated from December 6, 1977, until December 29, 1978, would penalize applicant for clerical errors committed by officials or employees of T.D.C., without any showing of fault on the part of the applicant. We believe that to act in this fashion would constitute a deprivation of applicant's due process and due course of law rights. We decline to so act and agree with applicant that the forfeiture of the good conduct time credit he had accumulated from December 6, 1977, until December 29, 1978, should be set aside, and we accordingly order it set aside. E.g., *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973).

■ However, though good conduct time credit may be "earned" by an inmate's good behavior and efficient performance of duties during incarceration, this credit does not become vested. Thus, though good conduct time may be accumulated, it may also be forfeited by the inmate for committing an offense or violating a rule or regulation of the Texas Department of Corrections. Art. 6181–1, Sec. 4, *supra.*

Because the record does not reflect what the applicant's "conduct" has been in T.D.C.

after he was reincarcerated in the Department of Corrections on January 24, 1980, we must therefore defer the matter to the Director of the Department of Corrections to make the determination of whether the applicant has committed an offense or violated a rule or regulation of the Department of Corrections after January 24, 1980, and we will assume that whatever determination the Director makes he will make it in accordance with his authority as set out in Sec. 4 of Art. 6181–1, *supra,* as well as in accordance with due process and due course of law.

It is therefore ordered that the applicant is granted calendar time credit from December 29, 1978, through January 24, 1980. The records of the Texas Department of Corrections shall also show that the applicant is entitled to good conduct time credit from December 6, 1977, through December 29, 1978, subject to the applicant's not having committed an offense or violated a rule or regulation of the Department of Corrections after January 24, 1980, the date of his reincarceration. Should it be shown to the contrary, we will assume that the Director of the Department of Corrections will act pursuant to his authority found in Art. 6181–1, Sec. 4, *supra,* as well as in accordance with due process and due course of law.

It is so ordered.

ONION, P.J., and ROBERTS, ODOM, TOM G. DAVIS, DALLY, W. C. DAVIS and McCORMICK, JJ., concur in result.