Mark BASDEN, Appellant,

v.

The STATE of Texas, Appellee.

McArthur COLEMAN, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 0042–94, 0245–94.

Court of Criminal Appeals of Texas, En Banc.

Feb. 8, 1995.

Debbie S. Holmes, Huntsville, for appellant in No. 42–94.

Gina M. Debottis, Sp. Prosecution Unit/Huntsville, Robert Huttash, State's Atty., Austin, for State in No. 42–94.

William Douglas Bloodworth, II, Huntsville, for appellant in No. 245–94.

Randy Sikes, Asst. Dist. Atty., Palestine, Robert Huttash, State's Atty., Austin, for the State in No. 245–94.

## OPINION ON APPELLANTS' PETITIONS FOR DISCRETIONARY REVIEW

McCORMICK, Presiding Judge.

These cases present the issue of statutory construction of Article 42.08(b), V.A.C.C.P., concerning cumulation of sentences for offenses committed while appellants were inmates in the Texas Department of Criminal Justice (TDCJ–ID). Appellants contend Article 42.08(b) requires that their sentences in the instant cases be cumulated with the sentence each was serving at the time the instant offense occurred, rather than cumulated with a sentence which had been assessed but which they had not yet begun serving.[1]

In unrelated cases Basden and Coleman were convicted of aggravated assault committed upon a correctional officer while each was incarcerated in the TDCJ. See V.T.C.A. Penal Code, Section 22.02(a)(2)(A). The relevant facts are:

### BASDEN

*Aggravated robbery: 50 years*
  Offense committed: February 9, 1986
  Conviction: August 4, 1986

*Attempted capital murder: 15 years*
  Offense committed: December 8, 1989
  Conviction: January 22, 1991

*Aggravated assault: 50 years*
  Offense committed: October 10, 1990
  Conviction: July 17, 1992

The fifteen-year sentence for attempted capital murder, committed while Basden was an inmate, was ordered to run consecutively to the original fifty-year aggravated robbery sentence. The second fifty-year sentence was ordered to run consecutively to the fifteen-year sentence for attempted capital murder. Thus, Basden was given three consecutive sentences of fifty, fifteen, and fifty years. He contends the fifty-year sentence for aggravated assault was erroneously ordered to run consecutive to the fifteen-year attempted capital murder sentence because he was not yet serving time on the attempted capital murder when he committed the aggravated assault. Rather, he argues that at the time of the assault he was serving time for the aggravated robbery, and that the fifty-year sentence for aggravated assault should be cumulated with that sentence.[2]

### COLEMAN

*Aggravated robbery: 15 years*
  Offense committed: January 11, 1989
  Conviction: February 8, 1989

*Escape: 10 years*
  Offense committed: June 10, 1989
  Conviction: October 27, 1989

*Aggravated assault: life*
  Offense committed: March 20, 1991
  Conviction: March 16, 1993

The ten-year sentence for escape, committed while Coleman was an inmate, was ordered to run consecutively to the original fifteen-year sentence for aggravated robbery. The life sentence for aggravated assault was ordered to run consecutively to the ten-year sentence in the escape conviction. Coleman contends the trial court erred in ordering the life sentence for aggravated assault to run consecutively to the escape sentence because he had not yet begun serving time on the escape sentence when he committed the aggravated assault. Rather, at the time of the

1. Article 42.08(b) states:
"If a defendant is sentenced for an offense committed while the defendant was a prisoner in the Department of Corrections and the defendant has not completed the sentence he was serving at the time of the offense, the judge shall order the sentence for the subsequent offense to commence immediately on completion of the sentence for the original offense."

2. Therefore, according to appellant, the fifteen-year sentence for the attempted capital murder and the fifty-year sentence for the aggravated assault should run concurrently with each other after they are stacked onto the original fifty-year sentence for aggravated robbery.

assault he was serving time for the aggravated robbery and argues that the life sentence should be cumulated with that sentence.

In Basden's case the Waco Court of Appeals affirmed the trial court's cumulation order and stated that the purpose of Article 42.08(b) was to require consecutive sentences when offenses are committed in prison. *Basden v. State*, 860 S.W.2d 725, 726 (Tex.App.—Waco 1993). Similarly, the Tyler Court of Appeals upheld the trial court's cumulation order in Coleman's case by finding this purpose was the legislative intent of Article 42.08(b). *Coleman v. State*, —— S.W.2d —— (Tex.App.—Tyler 1993). The Tyler court stated that the phrase "sentence for the original offense" encompassed the plural, "sentences for the original offenses." The court concluded the words "original sentence"[3] in Article 42.08(b) "means *any* sentence that the inmate is presently serving or *any* sentence that a given defendant has received." Both courts agreed with the State that appellants' interpretation of Article 42.08(b) was incorrect because it would give disruptive inmates no incentive to behave since additional convictions would necessarily be served concurrently with each other.

■■■ The starting point for statutory analysis is the text of the statutory provision at issue. *Boykin v. State*, 818 S.W.2d 782 (Tex.Cr.App.1991). Our duty is to attempt to discern the legislative intent or purpose of the statute by, if reasonably possible, giving effect to the plain meaning of the statute's language. See *Boykin*, 818 S.W.2d at 785–86; see also *Muniz v. State*, 851 S.W.2d 238, 265 (Tex.Cr.App.) (Clinton, J., dissenting), cert. denied, —— U.S. ——, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993). However, where application of the plain meaning of the statute's language would lead to "absurd" consequences that the Legislature could not possibly have intended, this Court, in arriving at a sensible interpretation of the legislative intent of the statute, will consider such extratextual factors as the legislative history and the object sought to be obtained by the statute. See *Boykin*, 818 S.W.2d at 785–86; Texas Government Code, Section 311.023.

■■ Appellants contend the Courts of Appeals ignored the plain meaning of Article 42.08(b). The State argues applying the plain meaning of Article 42.08(b) would lead to absurd consequences and contravene public policy.[4] We agree. The obvious intent of Article 42.08(b) is to deter inmates from committing crimes during their incarceration and to more harshly punish those inmates who are not deterred. *Cruz v. State*, 838 S.W.2d 682, 687 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd). Giving effect to the plain meaning of Article 42.08(b) would lead to the absurd result of permitting inmates to commit crimes without fear of punishment, would effectively immunize disruptive inmates from prosecution for crimes short of capital murder and would further undermine any reason to prosecute inmates who are severe discipline problems in our penal institutions. Any interpretation of Article 42.08(b) that

---

3. The phrase in section (b) actually reads "sentence for the original offense."

4. In the *Basden* case, the State argues:
"any inmate who is serving a lengthy sentence and receives additional sentences for additional crimes while incarcerated will never be punished. This result would defeat the purpose of trying those inmates who pose severe discipline problems in prison and is contrary to public policy. These inmates have no incentive to behave in prison if every additional sentence they receive will run concurrently with each other.
"To extend appellant's argument to its illogical conclusion, inmates such as Mark Basden whose history of discipline problems in prison includes several aggravated assaults on correctional officers at the Hughes Unit, attempted capital murder at the Wynne Unit, and an assault on an inmate at the Hughes Unit, will never serve additional time after the first [consecutive] sentence they have received. Violent inmates such as the appellant will be allowed to commit crimes with impunity if the additional sentences they receive run concurrently with each other.
"To run each of appellant's numerous prison convictions concurrently will give appellant an open invitation to continue assaulting guards and inmates and will threaten the safety of everyone in the prison system. Neither the constitution nor public policy sanctions a result whereby individuals can commit crimes with impunity simply because they are in prison. (Citation Omitted).
"Appellant's reasoning would give those individuals who have demonstrated a propensity to commit crimes in prison free rein to do just that. This would lead to increased security problems within the prison system and put both officers and inmates at risk. Public policy simply cannot sanction such a result."

results in creating a situation whereby inmates can commit crimes with impunity simply because they are in prison is absurd and should not be adopted by this Court.[5] Given the obvious purposes of Article 42.08(b), the Legislature could not possibly have intended these consequences.

We interpret Article 42.08(b) in such a way that its provisions act as a deterrent to the commission of a subsequent prison offense and adequately punish the commission of the prior prison offense.[6] The appellants' interpretation of Article 42.08(b) accomplishes just the opposite. And, under our holding, as applied here, though the appellants were not deterred from committing a second prison offense, they are being punished for committing the first prison offense, while, under their interpretation of Article 42.08(b), there effectively would be no punishment for that offense.

The legislative history of Article 42.08(b) also supports our holding. Subsection (b) of Article 42.08 was added by the 69th Legislature and became effective September 1, 1985. See Acts, 69th Leg., Reg. Session 1985, Ch. 29, p. 404 (SB 186). The bill analysis prepared for SB 186 states the "Problem that the bill addresses" is:

> "If inmates can serve subsequent sentences at the same time as the sentence they are already in TDC for, there is little effective deterrence from continued criminal behavior beyond loss of good time." "

At the public hearing held before the House Committee on law enforcement on March 20, 1985, the testimony presented made clear that the purpose of SB 186 was to prevent violence in TDC by mandating consecutive sentences. The clear message from that hearing is that there would be no con-

current sentences for crimes committed by inmates.

Accordingly, this Court holds that Article 42.08(b), V.A.C.C.P., provides for the stacking of sentences imposed for offenses committed while an inmate is incarcerated. The judgments of the Courts of Appeals in these cases are affirmed.

CLINTON, Judge, dissenting.

I agree with the majority that the starting point for statutory analysis is the text of the provision at issue and that extratextual factors, like legislative history, should be examined only if the plain meaning of the statute would lead to absurd consequences, that the legislature could not possibly have intended, or if the language is ambiguous. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App.1991). However, I part company with the majority when it holds that the plain meaning of Article 42.08(b), V.A.C.C.P., leads to absurd consequences.

When a defendant has multiple convictions, Art. 42.08(a) gives the trial court discretion to order the sentences to run consecutively or concurrently, limited only by sections (b) and (c). Article 42.08(b) states that if a prisoner in the Texas Department of Corrections (TDCJ) commits an offense while incarcerated and he has not completed "the sentence he was serving at the time of the offense," the judge shall order the new sentence to be served consecutive with the "sentence for the original offense." The meaning of Art. 42.08(b) is clear based on a plain reading of the text. The sentence for a "prison offense," an offense which is committed while one is serving time in prison, must begin to run when the sentence that was being served when that prison offense occurred is completed. Section (b) focuses on

---

**5.** For example, under the appellants' analysis, Basden, in effect, committed the attempted capital murder offense with impunity since the fifteen-year sentence for that offense would run concurrently with the fifty-year sentence for the aggravated assault offense.

**6.** For example, if an inmate receives a higher sentence for the first prison offense than that received for the second prison offense, then, under appellants' analysis, there is no deterrent for committing the second prison offense. And, if an

inmate receives a lower sentence for the first prison offense than that received for the second prison offense, like the appellants here, then, under their analysis, there has been no punishment for committing the first prison offense. Both are true, if the sentences for the first and second prison offenses are the same, i.e., no deterrent for committing the second prison offense and no punishment for the first prison offense.

the date of the commission of the new offense and that date determines what sentence is the "sentence for the original offense." Section (b) is to be read as a whole: the "sentence for the original offense" necessarily refers to the first part of section (b)—the sentence being served at the time of the offense. Therefore, Basden's sentence for the aggravated assault conviction should have been ordered to run consecutively with his aggravated robbery sentence rather than cumulated with the sentence for attempted capital murder, because Basden had not yet begun serving time on the attempted capital murder sentence. Likewise, Coleman's sentence for the aggravated assault conviction should have been ordered to run consecutively with his aggravated robbery sentence rather than cumulated with the sentence for escape because Coleman had not yet begun serving time on the escape sentence.

The majority does not disagree that this is indeed the plain meaning of Art. 42.08(b). The majority argues, however, that to construe the provision according to its plain terms leads to an absurd result—"consecutive sentence" deterrence for the first prison offense but no such deterrence for subsequent prison offenses. The majority argues that it is "absurd" to construe the statute to provide anything other than the maximum deterrent effect imaginable, notwithstanding its plain terms.

I would point out, first of all, that this construction of Art. 42.08(b), according to its plain terms, is in keeping with the description of the "Problem that the bill addresses" that the majority quotes from the bill analysis, *viz:*

> "If inmates can serve *subsequent sentences* at the same time as *the sentence they are already in TDC for,* there is little effective deterrence from continued criminal behavior beyond loss of good time."

(Emphasis added.) Notice that nothing is said of the dire consequences of allowing subsequent sentences to be served "at the same time" as *each other.* Secondly, just because Art. 42.08(b) does not reach as far as the majority might like or punish as severely as the majority thinks fit or as the majority thinks the legislature intended does not ren-

der it "absurd." What the legislature meant to do is not the issue. It is what the legislature did through the plain meaning of the statute that must be determined. "[T]his Court does not have an option to rescue the Texas Legislature from the inexorable consequences of its own unambiguous language." *Moore v. State,* 868 S.W.2d 787, 791 (Tex.Cr. App.1993). That the provision *could* have been worded to punish more severely does not authorize this Court to ignore the plain meaning of the statute.

Finally, who is to say that the scheme that the majority envisions as the most deterrent imaginable necessarily is? According to the plain terms of Art. 42.08(b), an inmate serving a lengthy sentence who commits a prison offense will serve the new sentence consecutively to the service of the original sentence. If the sentence for the prison offense is also a lengthy one, the inmate is now looking at a substantial period of incarceration. Stacking a further sentence for yet another prison offense onto the first prison offense, as the majority advocates, will not likely serve as much of a deterrent under these circumstances. An inmate with substantial prison time ahead of him is simply not likely to be deterred by the prospect of more. As subsequent prison offenses accumulate, the scheme will eventually remove any disincentive whatsoever for the inmate to refrain from prison mischief, since he will eventually be facing consecutive sentences that, even with good time, far exceed his expected lifespan. Such an inmate could prove wholly unmanageable. In short, in some instances the majority's idea of maximum deterrence could result in maximum chaos. Thus, the majority not only legislates improperly, it legislates badly. If the Legislature wants to make such a mistake, that is its prerogative—it can amend the provision. But we should not construe them, by fiat, to have made such a mistake when there is nothing remotely "absurd" about giving Art. 42.08(b) the meaning it plainly imparts.

I would hold that the Courts of Appeals erred in upholding the cumulation orders in the instant cases and would reform the cumulation orders so that the sentences for the aggravated assault convictions be ordered to

run consecutive with the sentence which each appellant was serving at the time he committed the assault. Because the majority opinion does not do so, I respectfully dissent.

OVERSTREET and MEYERS, JJ., join.