**Ex parte Roger CANADA.**

**No. 69704.**

Court of Criminal Appeals of Texas,
En Banc.

May 11, 1988.

Roger Canada, pro se.

Sam D. Millsap, Jr., Former Dist. Atty. and Charles Estee, Former Asst. Dist. Atty., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

DUNCAN, Judge.

This is a post-conviction application for a writ of habeas corpus transmitted to this Court pursuant to Article 11.07, V.A.C.C.P. The applicant was convicted of the offense of burglary and assessed a punishment of five years in the Texas Department of Corrections. Applicant's conviction was affirmed in an opinion by this Court. *Canada v. State*, 660 S.W.2d 528 (Tex.Cr.App. 1983), *affirming*, 636 S.W.2d 632 (Tex.App. —San Antonio 1982). In his application for writ of habeas corpus, applicant contends that he is being denied flat time credit for the time he was incarcerated between his arrest on the execution of an arrest warrant for a parole violation and the date on which his parole was formally revoked or continued. A brief recitation of facts is necessary.

## I. FACTS

As previously noted, applicant was convicted by a jury of burglary of a habitation and assessed a five year prison sentence on November 14, 1980. In the judgment of conviction the applicant was properly credited for the time he spent in jail prior to his trial. Approximately one year later, on November 16, 1981, applicant was released on parole. Shortly thereafter, an arrest warrant was issued based upon allegations that he had violated the terms of his parole. The Pre–Revocation Warrant of Arrest was

executed on March 8, 1982 and he was placed in jail. The applicant thereafter requested a hearing on the revocation charges. After holding a hearing, the applicant's parole was continued and the pre-revocation warrant was withdrawn on May 20, 1982. Thus, the applicant was confined for seventy-four days before he was released.

On July 28, 1983, a second pre-revocation arrest warrant was issued on the basis of several alleged parole violations, to-wit: possession of a firearm, burglary of a habitation, theft, driving without an operator's license and no liability insurance. However, the applicant had already been arrested on July 11, 1983 for some of the criminal offenses that constituted the alleged parole violations. At the conclusion of a requested formal parole revocation hearing on September 19, 1983, the applicant's parole was revoked. Thus, this time the applicant remained in the county jail for approximately fifty-four days.[1]

After returning to the penitentiary, the appellant was convicted for the offense of aggravated assault on a prison guard and assessed on additional five year sentence to be served consecutively. Section 22.-02(a)(2), V.A.P.C. The appellant was to begin serving this latter sentence only after completing his initial five year sentence for burglary of a habitation. Article 42.-08(b), V.A.C.C.P. At the time the appellant filed his writ of habeas corpus on June 19, 1986, he had arguably discharged his initial

five year sentence. The record, however, does not reveal the appellant's status with regards to this initial sentence. Nor does the State argue tht he has discharged his sentence.

According to the Inmate Tracking System Commitment Data form used by the Texas Department of Corrections to determine sentence length, the appellant is being treated as though he had been assessed a single ten year sentence. For purposes of this writ application, it is immaterial whether the appellant is being treated by TDC as having one ten year sentence or two consecutive five year sentences. In either situation, if the appellant were to prevail in his claim to flat time credit he would eventually be discharged that much sooner. For example, if the appellant were to receive any credit for time spent in the county jail pending a formal revocation of his parole on his original burglary conviction, he would have discharged that sentence sooner and consequently begun to serve his five year sentence for assault on a prison guard sooner also.

In summary, the applicant contends that he has been denied flat time credit towards fulfillment of his first five year sentence for these two separate periods of confinement pending the two separate parole revocation hearings. The State contends that a denial of credit for time spent in confinement prior to a parole revocation hearing is appropriate because of Article 42.18, § 15(a), V.A.C.C.P.:[2]

---

**1.** It is not clear from the record whether the applicant was convicted of any of these separate criminal offenses.

**2.** Article 42.18, § 15, carried forward the existing language of Article 42.12, § 22, *supra,* the Code of Criminal Procedure section that preceded it, and was not intended to constitute a substantive change in the law. Acts 1985, 69th Leg., ch. 427, § 2.

As originally adopted in 1965, Article 42.12, § 22, read in relevant part:

When the Governor revokes a prisoner's parole, he may be required to serve the portion remaining of the sentence on which he was released on parole, such portion remaining to be calculated without credit for the time from the date of his release on parole *to the date of his arrest or charge of parole violation* [emphasis added].

Acts 1965, 59th Leg., Vol. 2, p. 317, ch. 722. Thus the incarcerated parolee awaiting a parole revocation hearing was awarded time credit for any period after his arrest on the parole revocation charges.

This language was carried forward without substantial change from the predecessor of Article 42.12, § 22, Article 781d, § 22. Acts 1957, 55th Leg., p. 466, ch. 226. Similarly, Article 781d, § 22, represented a duplication of the language of its respective predecessor Article 781b, § 20. Acts 1947, 50th Leg., ch. 452.

In 1973, Article 42.12, § 22, *supra,* was amended in pertinent part to read:

When the Governor revokes a prisoner's parole, he may be required to serve the portion remaining of the sentence on which he was released on parole, such portion remaining to be calculated without credit for the time from the date of his release on parole *to the date of*

When a person's parole, mandatory supervision, or conditional pardon is revoked, that person may be required to serve the portion remaining of the sentence on which he was released, such portion remaining to be calculated without credit for the time from the date of his release to the date of revocation. When a warrant is issued by the board or the governor charging a violation of release conditions, the sentence time credit shall be suspended until a determination is made by the board or the governor in such case and such suspended time credit *may* be reinstated by the board should such parole, mandatory supervision, or conditional pardon be continued [emphasis added.]

The State observes that the applicant's parole was continued following the execution of the first arrest warrant. The Board of Pardons and Paroles, vested with the discretion provided in Article 42.18, § 15(a), *supra*, thereafter refused to credit the applicant with the time spent awaiting the first parole revocation hearing. Likewise, the State argues that Article 42.18, § 15(a), *supra*, mandatorily denies any time credit for time spent in confinement between the execution of the second arrest warrant and the formal revocation hearing.

The applicant, however, contends that Article 42.18, § 15(a), *supra*, operates to deny him his due process of law rights of the Fourteenth Amendment to the Federal Constitution and his due course of law rights within the Texas Constitution. That is, by failing to give flat time credit for time spent in confinement following the execution of these two separate parole revocation warrants, the applicant is suffering

a deprivation of liberty greater than that for which he was originally sentenced.

This application for writ of habeas corpus was filed and set on December 3, 1986. At that time, the applicant was confined within the Ramsey Two Unit of the Texas Department of Corrections. On September 10, 1987 the applicant was released on mandatory supervision. If the applicant satisfactorily completes the mandatory supervision program he is scheduled to be discharged on June 27, 1992. Our initial inquiry focuses on whether applicant may assert his claim to relief by way of an application for writ of habeas corpus pursuant to Article 11.07, *supra*.

## II. ARTICLE 11.07 WRIT OF HABEAS CORPUS JURISDICTION

■ An individual under the mandatory supervision of the Board of Pardons and Paroles (hereinafter the Board) has been released from the physical custody of the Texas Department of Corrections, but must serve the remainder of his sentence under the supervision and control of the Board. Article 42.18, § 2(b), *supra*. The mandatory supervision program is separate and distinct from that of parole. Also, mandatory supervision may not be construed as either a commutation of sentence or any other form of executive clemency. Consequently, the individual placed on mandatory supervision has not yet discharged his original sentence.

While the eligibility for parole and mandatory supervision programs may differ, upon release a prisoner under mandatory supervision shall be deemed as if released on parole. Article 42.18, § 8(c), *supra*.

---

*his revocation of parole by the Governor on the charge of parole violation.* When a warrant is issued by the Board of Pardons and Paroles or the Governor charging a parole violation, the sentence time credit shall be suspended until a determination is made by the Board of Pardons and Paroles or the Governor in such case and such suspended time credit *may* be re-instated by the Board of Pardons and Paroles should such parole be continued [emphasis added].

The amendment reformed existing law to deny the parolee who was incarcerated pending a parole revocation hearing that flat time credit to

which he had previously been entitled. This amendment was proposed for the first time as a Jurisprudence Committee Substitute Bill to SB 335 which had initially proposed to change only the time limit by which time a hearing must be held following arrest from 45 days to 60 days. Unfortunately, the recorded transcripts of that Committee meeting are unintelligible. The House Criminal Jurisprudence Committee did not debate the merits of the amendment. Consequently, the legislative reasons for amending Article 42.12, § 22, *supra*, in this manner are unknown.

Accordingly, every prisoner on mandatory supervision remains in the legal custody of the State. *Id.; Yarbrough v. State* 703 S.W.2d 645 (Tex.Cr.App.1985).

In order to submit an application for a post-conviction writ of habeas corpus pursuant to Article 11.07, §§ 2 and 3, *supra,* an applicant must at the outset be complaining of a final felony conviction. *Ex parte Renier,* 734 S.W.2d 349, 351 (Tex.Cr. App.1987). In addition, it must be emphasized that Article 11.07, *supra,* is concerned with confinement as opposed to restraint. *Ex parte Renier, supra.*

In *Ex parte Renier, id.,* the applicant was complaining of a void conviction that had been completely discharged by his satisfactorily fulfilling the conditions of his probation. After satisfactorily completing the required time on probation, the trial court permitted the defendant to withdraw his plea of guilty, the indictment was dismissed and the judgment of conviction set aside. This Court held that the defendant had been released from all penalties and disabilities and that there had been no final felony conviction. In addition, we held that the defendant was not in *confinement,* thereby failing to establish the other prerequisite to relief.

Comparing the Article 11.07, *supra,* requirements as detailed in *Ex parte Renier, supra,* to this case, it is quite obvious that the applicant meets the first condition in that his complaint concerns a final conviction for the felony offense of burglary of a habitation. V.T.C.A. Penal Code, § 30.01.

Relative to the second requirement, Article 11.21, *supra,* in essence equates the term "confined" with not only physical detention but "any coercive measures by threats, menaces or the fear of injury, whereby one person exercises a control over the person of another, and detains him within certain limits." *Id.* Further, the determination of whether one is confined is to be made on the date the application for writ of habeas corpus is filed. In *Ex parte Renier, supra,* the Court stated: "[w]e see that before and in *Ex parte Guzmon* ... [551 S.W.2d 387 (Tex.Cr.App.1977)] every 11.07 applicant was under some character

of confinement—at least at the time he filed his application." *Id.;* see also *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). At the time of his application the applicant was in physical custody. Under Article 11.21, *supra,* he is still in confinement. *Ex parte Elliott,* 746 S.W.2d 762, 763 fn. 1 (Tex.Cr.App., 1988). Consequently, the applicant meets the second criteria necessary to require a review of his application by this Court.

It should be observed that by releasing the applicant under mandatory supervision the contentions raised in his application for writ of habeas corpus have not become moot. In *Ex parte Burt,* 499 S.W.2d 109 (Tex.Cr.App.1973), we observed that a criminal case is moot " '[o]nly if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction.' " *Id.,* at 110 (citing *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. 29 (1968)); see also *Ex parte Legg,* 571 S.W.2d 930 (Tex. Cr.App.1978); *Ex parte Guzman,* 551 S.W. 2d 387 (Tex.Cr.App.1977); *Ex parte Crosley,* 548 S.W.2d 409 (Tex.Cr.App.1977); *Ex parte Langston,* 510 S.W.2d 603 (Tex.Cr. App.1974).

The applicant is not challenging his conviction, but is instead challenging the time necessary to fulfill his sentence, and this Court has previously held that the duration of a prisoner's confinement and applicable time credits is a proper subject for an Article 11.07, *supra,* writ of habeas corpus. *Ex parte Henson,* 731 S.W.2d 97 (Tex.Cr. App.1987); *Ex parte Peel,* 626 S.W.2d 767 (Tex.Cr.App.1982); *Ex parte Hurd,* 613 S.W.2d 742 (Tex.Cr.App.1981); *Ex parte Pizzalota,* 610 S.W.2d 486 (Tex.Cr.App. 1981); *Ex parte Weaver,* 537 S.W.2d 252 (Tex.Cr.App.1976); *Ex parte Esquivel,* 531 S.W.2d 339 (Tex.Cr.App.1976).

Further, a time credit complaint is not rendered moot if direct or collateral legal consequences may flow from the wrongful denial of earned time credit. Consequently, a time credit complaint may be rendered moot when an inmate is completely discharged from confinement, control or supervision. Yet an individual placed on

mandatory supervision must serve a period of time equal to the maximum term for which he was sentenced *less calendar time actually served on the sentence* before his sentence is considered discharged. Article 42.18, § 8(c), *supra.* Thus, the contentions raised in applicant's application for writ of habeas corpus requesting credit for additional flat time have a direct impact on the amount of time under which the applicant will be subject to the Board's mandatory supervision. Nor is the applicant's claim rendered moot by the discharge of his initial five year sentence. As previously stated, the denial of earned time credit on the initial sentence would serve to delay his eventual discharge date on that sentence. In doing so, the commencement of the second five year sentence was likewise delayed. Prior convictions which have been discharged may have serious collateral consequences to a criminal defendant, thus the mootness doctrine cannot prohibit a collateral attack. *Ex parte Guzman,* 551 S.W. 2d 387 (Tex.Cr.App.1977). In this case the failure to properly credit flat time on a discharged conviction has a direct bearing on the amount of time to be served pursuant to a consecutive sentence. Clearly, the applicant is suffering collateral consequences from the denial of properly earned time credits on the initial five year sentence.

## III. WHETHER FLAT TIME CREDIT MUST BE GIVEN FOR TIME SPENT IN CONFINEMENT FOLLOWING RELEASE ON PAROLE OR MANDATORY SUPERVISION

The applicant is complaining of the denial of flat time credit in two separate instances: (1) the seventy-four day period spent in confinement between the execution of the first pre-revocation warrant and the date on which his parole was continued; and (2) the fifty-four day period between the execution of the second pre-revocation warrant and the date on which his parole was for-

mally revoked.[3] For clarity the latter period of confinement will be considered first.

### A. Confinement Between Execution of the Second Pre-Revocation Warrant and the Date on Which Parole was Formally Revoked

■ As previously noted, the applicant contends that he has been denied flat time credit for the period between the execution of the second pre-revocation warrant and the date on which his parole was formally revoked. The State argues that Article 42.18, § 15(a), *supra,* requires the denial of any time credit for the period following an inmates release on parole and the date on which his parole is revoked, which necessarily includes any detention which is prior to formal revocation. Despite the State's contentions as to the mandatory nature of Article 42.18, § 15(a), *supra,* and rather surprisingly, the record reveals that the applicant is not only receiving flat time for the period following arrest on the pre-revocation arrest warrant but good time credit as well.

The Proclamation by the Governor of the State of Texas revoking the applicant's parole specifically orders the proper authorities to transfer the applicant to the Texas Department of Corrections to serve the sentence imposed upon him "and the time during which subject has been *at large* on parole or administrative release, shall not be considered or credited to subject as time served on sentence [emphasis added]." Consequently, the order revoking applicant's parole expressly gives him the relief he requests. Moreover, the inmate tracking system commitment data form used by TDC indicates that the applicant is being credited with "jail good time" from July 28, 1983, the date on which the applicant was arrested the second time. Thus, in contravention of the admittedly mandatory language of Article 42.18, § 15(a), *supra,* the applicant is receiving credit on his sentence for the period in which he was confined

---

**3.** At the outset we emphasize that we are not concerned with any allocation and forfeiture of good time credits as it is well established that good time credit is a privilege and not a right, which may be forfeited by violating TDC rules while in custody, or by violating the guidelines of a conditional release program. Article 6181–1, § 4, V.A.Civ.St.; *Ex parte Henderson,* 645 S.W.2d 469 (Tex.Cr.App.1983).

between the execution of the second warrant and the revocation of his parole. Accordingly, applicant's second complaint is rejected.

### B. Confinement Between Execution of the First Pre–Revocation Warrant and the Date on Which Parole Was Continued

As previously noted, the applicant also complains of the denial of flat time credit for the period in which he was confined between the execution of the first pre-revocation warrant and the date on which the pre-revocation warrant was withdrawn because the applicant's parole status was continued. The record before us confirms that the applicant has not been given any credit for this seventy-four day period of confinement. The State contends that the denial of time credit in this instance is proper pursuant to the discretionary authority granted the Board by Article 42.18, § 15(a), V.A.C.C.P.

The allowance or denial of time credits toward the fulfillment of an assessed sentence on constitutional grounds continues to be a source of problems. As a corollary consideration, one should observe that there is no constitutional right to credit for the time served between an arrest and the sentence. *Jackson v. State of Alabama*, 530 F.2d 1231 (CA5 1976); *Gremillion v. Henderson*, 425 F.2d 1293 (CA5 1970). But see *Parker v. Estelle*, 498 F.2d 625, 627 (CA5 1974), *cert. denied*, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450. However, and despite the apparent absence of at least any federal constitutional necessity, Texas has historically and statutorily allowed the trial judge at least the discretion of crediting a defendant's sentence with the time he spent in jail prior to the date he is sentenced. (Prece. to art. 42.02) In 1973 the Legislature amended old Article 42.03, § 2, V.A.C.C.P., and made it mandatory that the trial judge award such time credit to a defendant's sentence. The statute now states:

(a) In all criminal cases the judge of the court in which the defendant was convicted shall give the defendant credit on his sentence for the time that the defendant has spent in jail in said cause, from the time of his arrest and confinement until his sentence by the trial court.

(b) In all felony probation revocations the judge shall enter the restitution or repraration due and owing on the date of the revocation of probation.

In *Ex Parte Green*, 688 S.W.2d 555 (Tex. Cr.App.1985), the Court observed the change and stated:

In so doing the Legislature recognized that pretrial confinement, though not instigated for purposes of punishment, nevertheless has an incidental punitive effect in that it deprives the detainee of his liberty. To compensate for this deprivation the Legislature provided that whenever that detainee is ultimately assessed a term of imprisonment the convicting court shall grant credit to his sentence for time spent in pretrial detention, even though the detention was not imposed *at the time* for purposes of punishment [emphasis in original.]

*Id.*, at 557.

Article 42.03, *supra*, was also amended to require that the trial judge credit a defendant for any time spent in confinement pending appeal. Article 42.03, § 3.

Further, in *Guerra v. State*, 518 S.W.2d 815 (Tex.Cr.App.1975), this statutory right to time credit was extended to pre-revocation of probation confinement. The basis for this interpretation was that when a defendant is placed on probation the imposition of sentence is suspended, Article 42.-12, § 3, *supra*. It is only after the probation is revoked that the sentence is imposed. Since Article 42.03, § 2, *supra*, requires the trial judge to credit one's sentence with the time of confinement incurred prior to the sentence it naturally and logically follows that pre-revocation confinement must be allocated to the sentence.

Unlike pre-trial sentence credit and pre-revocation of probation credit there is no mandatory statutory right to time credit for confinement pending a parole revocation hearing. Indeed, Article 42.18, § 15(a), *supra*, specifically dispenses with such right. The question then is whether

the denial of a sentence credit for confinement prior to the Board's decision to continue one on parole is constitutional under the Fourteenth Amendment to the United States Constitution or Article I, § 19, of the Texas Constitution? This precise question has not been addressed previously by this Court.[4]

■ It appears that there is no federal constitutional right to time credit for any period of confinement pending a parole revocation hearing.[5] That conclusion, however, merely begins the necessary review.

According to Article 42.18, § 15(a), if a parolee's parole is revoked he is not entitled to receive credit on his sentence for any "time from the date of his release [on parole] to the date of revocation." By its language this would necessarily include the time of confinement from his arrest on a pre-revocation warrant until the revocation. However, in the factual situation with which we are presently confronted if a parolee's parole is initially continued and revoked at a later time the Board has the

discretion of awarding him a time credit for the period of initial incarceration. In other words, the Board is authorized but not statutorily required to award a parolee this time.

It is particularly important to note that a parolee, although no longer in physical custody is nevertheless in legal constructive custody of the State. Article 11.21, *supra.* However, when the pre-revocation warrant is executed his practical status is obviously altered—he is again in the physical custody of the State. Thus, although the parolee's parole status has not changed (he is still on parole), he no longer enjoys the primary benefit of parole, the release from confinement. When the applicant was arrested on the pre-revocation warrant and placed in the Bexar County Jail he was again in the physical custody of the State.

Further, a parolee confined prior to a parole revocation hearing is not entitled to bail. Article 42.18, § 14(a), *supra.* Whereas, in most instances, one merely charged

4. In *Ex parte Bowens,* 581 S.W.2d 185 (Tex.Cr.App.1979), reviewing the predecessor statute, we held that a parolee was entitled not only to flat time but good time credit as well, for any time period in which the parolee was confined pursuant to a pre-revocation parole warrant regardless as to whether parole was continued or revoked.

In *Ex parte Bowens, id.,* we held that the defendant's right to time credits for periods of confinement on parole revocation warrants was rooted in Article I, § 19 of the Texas Constitution:

[Since] ... petitioner did not have his choice of custodian, it is repugnant to Article 1, Section 19 of the Texas Constitution to deny him credit for good conduct while in the federal institution....

We do not feel that Article 42.03, Vernon's Ann.C.C.P., effective August 27, 1973, is controlling, since this provision of the code pertains to the trial court only. After sentence has become final, the defendant is in the custody of the Department of Corrections either through 'constructive' or 'physical' detention. It is this rationale that compels this Court to require the Department of Corrections to apply 'good time' credit equally to both;

*Id.,* at 186 (citing *Ex parte Williams,* 551 S.W.2d 416 (Tex.Cr.App.1977).

At that time Article 42.12, § 22, required the parolee confined pursuant to a pre-revocation warrant to receive credit for such time. We

specifically declined to consider the impact of the revisions of then Article 42.12, § 22, which have refused the allowance of flat time credit as well as good time credit. *Id.,* at 187, fn. 1.

The right to good time credit was dependent upon the existence of a statutory right to "time," without any distinction between flat time or good time. Since good time credit is a privilege and not a right, *Ex parte Henderson, supra,* due course of law rights are not breached if that privilege is narrowed or deemed forfeited given misconduct. Our question is altogether different. That is, may an inmate's right to calendar time likewise be statutorily narrowed and deemed forfeited given misconduct.

5. In the only case we could find on the subject, a United States District Court held:

The State contends that if a parole revocation hearing is required, a parolee can endure a reasonable period of confinement awaiting determination of his delinquency without receiving credit for said period of confinement on his sentence. We agree. This action does not reach Constitutional proportions.

*Ivy v. State of Alabama,* 381 F.Supp. 503 (S.D.Ala.1974).

In *United States Ex rel Fitzpatrick v. United States Parole Comm'n,* 444 F.Supp. 1302 (M.D.Pa.1978), the district court held that 18 U.S.C. § 4205 required credit for time spent confined following the execution of a pre-revocation arrest warrant. See also *Still v. United States Marshall,* 780 F.2d 848 (CA 10 1985).

with an offense or convicted and appealing the conviction is, with few exceptions, constitutionally entitled to make a bail bond and be released from custody. Article I, § 11, Texas Constitution. This observation points out a primary difference between the parolee and the defendant incarcerated prior to trial, or on appeal. In the latter instances the defendant is entitled to either post a reasonable bail and be released from custody, or alternatively, remain in custody and be entitled to credit on any subsequently assessed imprisonment. In the former instance, the parolee, is given neither right.

In summary, any confined individual is entitled to credit on his sentence except the parolee who has his parole continued and is later revoked.

There is also a comparable relationship between a defendant's right of appeal and a parolee's right to a hearing. In *Robinson v. Beto*, 426 F.2d, 797 (CA5 1970), the Fifth Circuit Court of Appeals, citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and its conclusion that there must not be any penalty imposed on one for exercising a constitutional right of appeal, held that "[d]ue process requires that a State, once it establishes avenue of appellate review, must keep those avenues free of unreasoned distinctions that impede open and equal access to the courts." *Id.,* at 798. In other words, a defendant's right of appeal must remain unfettered. Accordingly, in *Robinson* the Fifth Circuit struck down the Texas statutory scheme which vested the trial judge with the discretion to credit or deny confinement time credit incurred while a defendant was appealing his case. They reasoned that a defendant who does not appeal his conviction will immediately begin receiving time credit toward a completion of his sentence, whereas the defendant who appeals his conviction is basically at the mercy of the trial judge who had the discretion to grant or deny such time credits. This procedure "impede[s] open and equal access to appellate review since it may deter a defendant from appealing...." *Id.,* at 799.

*Robinson v. Beto, supra,* was expanded in *Pruett v. Texas,* 468 F.2d 51 (5th Cir. 1972), aff'd and modified in part, 470 F.2d 1182 (5th Cir.1973), aff'd 414 U.S. 802, 94 S.Ct. 118, 38 L.Ed.2d 39 (1973), to require that accumulated good time acquired while an appeal is pending be granted to a defendant. In *Pruett* the Fifth Circuit again relied upon *North Carolina v. Pearce, supra,* and quoted from it as follows:

Penalizing those who choose to exercise constitutional rights "would be patently unconstitutional." *U.S. v. Jackson,* 390 U.S. 570 [88 S.Ct. 1209, 20 L.Ed.2d 138] (1968) And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to 'chill the exercise of basic constitutional rights' [citations omitted].

*Id.,* at 56.

In *Ex Parte Williams,* 738 S.W.2d 257 (Tex.Cr.App. 1987) and relying in part upon *Morrissey v. Brewer,* 408 U.S. 471 (1972), this Court concluded that Article 42.12, § 22, *supra,* which authorized the Board to automatically and without a hearing revoke the parole of one who was convicted of a felony while on parole, was violative of one's "federal constitutional due process rights." *Id.,* at 261. Consequently, a parolee has an absolute constitutional federal due process right to a revocation hearing, just as a defendant in Texas has an absolute constitutional due process right to an appeal following a conviction.

■ Comparing the right to a revocation hearing with the right of appeal it is apparent that Article 42.18, § 15, *supra,* is constitutionally infirm. The denial of time credit to the defendant who is appealing his conviction constitutes an infringement of his constitutional right to freely exercise his right of appeal. *Robinson v. Beto, supra.* Similarly, the discretionary authority to deny time credit to the parolee awaiting revocation constitutes a "punitive policy ... ," *Pruett v. Texas, supra,* 56, that may chill the parolee's decision to exercise his constitutional right to a pre-revocation hearing. This is so because the parolee who waives his right to a hearing and his parole is revoked will immediately begin to

accrue time toward the completion of his sentence. Article 42.18, § 15(a), *supra.*

The unconstitutionality of Article 42.18, § 15(a), *supra,* is not cured by the fact that a parolee's parole is continued, just as the constitutional infirmities of the statute in *Robinson v. Beto, supra,* would not have been cured if the defendant enjoyed a successful appeal.

The discretion to grant or deny, and in this case the denial, of time credit to a parolee confined pursuant to a pre-revocation warrant but later has his parole continued only to have it later revoked is violative of the parolee's right of due course of law under Article I, § 19, of the Texas Constitution. To the extent that Article 42.18, § 15(a), *supra,* vests the Board of Pardons and Paroles the discretion to do otherwise it is unconstitutional. Thus, any time spent in confinement pursuant to the execution of a pre-revocation warrant cannot be denied a parolee.[6]

Accordingly, the applicant is entitled to receive credit off his sentence for the seventy-four calendar days in which he was confined prior to the Board's withdrawal of the pre-revocation warrant and the initial continuation of his parole. A copy of this opinion will be delivered to the Texas Department of Corrections.

TEAGUE, J., concurs.

6. *Worth v. Board of Pardons and Paroles,* 146 Ariz. 97, 703 P.2d 1246 (App.1985); *Hines v. Pennsylvania Board of Probation and Paroles,* 491 Pa. 142, 420 A.2d 381 (1980); *State v. Velazquez,* 122 Ariz. 81, 593 P.2d 304 (1979); *Williams v. State* 450 P.2d 232 (Okla. 1969); cf. *People v. Martinez,* 728 P.2d 363 (Colo.App. 1986); *Merna v. State,* 95 Nev. 144, 591 P.2d 252 (1979); *State ex rel Molero v. Blackburn,* 379 So.2d 725 (La. 1979).