**Ex parte Earnest A. MILLARD, Jr., Applicant.**

No. 73884.

Court of Criminal Appeals of Texas, En Banc.

June 6, 2001.

Earnest A. Millard, Jr., pro se.

Randall W. Reynolds, DA, Monahans, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court, in which PRICE, HOLLAND, HERVEY, and HOLCOMB, JJ., joined.

Earnest Millard was serving two stacked sentences when the Texas Department of Criminal Justice (TDCJ) released him to parole. We must decide whether his release to parole on either sentence was erroneous, entitling Millard to credit for the time he was at large. We conclude that the release was erroneous as to both sentences.

## Background

Millard was convicted of burglary of a habitation and sentenced to ten years' confinement. He was later convicted of criminal mischief and sentenced to four years to run consecutively with the ten-year burglary sentence. Millard was released on parole in the burglary case on April 5, 1990, because TDCJ officials mistakenly believed the sentences were concurrent. Parole was revoked on November 11, 1994. In the burglary case, Millard was credited with the time he was incarcerated under pre-revocation warrants. He was not otherwise credited on either the burglary or the criminal mischief sentence for the time between April 5, 1990, and November 11, 1994. TDCJ records currently show that Millard has not begun serving his four-year criminal mischief sentence.

Millard filed this post-conviction application for writ of habeas corpus alleging that his four-year sentence should have begun on April 5, 1990, in accord with Article 42.18, § 8(d)(2)(B).[1] Millard also contends he is entitled to credit on both sentences for the time he was erroneously released.[2] The trial court found that Millard was erroneously released through no fault of his own and that Millard is entitled to credit on both sentences for the time he was erroneously released.

## Analysis

### A.

We have consistently found time credit claims to be cognizable on a writ of habeas corpus.[3] Nevertheless, the Legislature

---

1. Former TEX.CODE CRIM. PROC. Art. 42.18, § 8(d)(2)(B) (now TEX. GOV'T CODE § 508.150(b)). Unless otherwise indicated, all references to Articles refer to the Code of Criminal Procedure.

2. *See Ex parte Esquivel,* 531 S.W.2d 339 (Tex. Crim.App.1976).

3. *Ex parte Evans,* 964 S.W.2d 643, 645 (Tex. Crim.App.1998); *Ex parte Ruthart,* 980 S.W.2d 469, 470 (Tex.Crim.App.1998); *Ex parte Canada,* 754 S.W.2d 660, 663 (Tex.Crim. App.1988). *See also Ex parte Henson,* 731 S.W.2d 97 (Tex.Crim.App.1987); *Ex parte Peel,* 626 S.W.2d 767 (Tex.Crim.App.1982);

has recently decided that inmates seeking time credit relief in a writ application filed after January 1, 2000, must first exhaust administrative remedies by complying with § 501.0081 of the Texas Government Code.[4] But since Millard filed this application in the trial court in 1999, § 501.0081 does not apply. We must consider the merits of his claim.

### B.

■ Once a person begins serving a sentence, that person continues serving the sentence, either in prison, on parole, or on mandatory supervision, until the sentence is discharged.[5] A sentence must be continuous and a prisoner or inmate cannot be required to serve his sentence in installments.[6] It follows that an inmate erroneously released from confinement through no fault of his own is entitled to credit on his sentence for the time he was at liberty.[7]

■ Of course, to prevail in habeas, an applicant must show harm.[8] In the case of an erroneous release from custody, the harm to the applicant is the depriva-

tion of time credits which would have been accrued had the applicant remained in custody. We have implicitly applied this rationale in two recent cases.[9]

### C.

■ At the time of Millard's burglary conviction, the law provided that he would be eligible for parole when his calendar time served plus good conduct time equaled one-fourth of his sentence or 15 years, whichever was less.[10] But the law also specified that the Parole Board could "not release on parole a prisoner sentenced to serve consecutive felony sentences earlier than the date on which the prisoner [became] eligible for release on parole from the last sentence imposed on the prisoner."[11] Therefore, an inmate who begins serving consecutive sentences after the first sentence is not actually eligible for release on parole until the inmate becomes eligible for release on all the sentences.

### D.

■ In this case, Millard was convicted of burglary on December 7, 1989, and re-

---

*Ex parte Hurd,* 613 S.W.2d 742 (Tex.Crim. App.1981); *Ex parte Pizzalota,* 610 S.W.2d 486 (Tex.Crim.App.1981); *Ex parte Weaver,* 537 S.W.2d 252 (Tex.Crim.App.1976); *Esquivel,* 531 S.W.2d at 340–42.

4. *Ex parte Stokes,* 15 S.W.3d 532, 533 (Tex. Crim.App.2000).

5. *Ex parte Kuester,* 21 S.W.3d 264, 272 (Tex. Crim.App.2000).

6. *Ibid.*

7. *Ex parte Yates,* 659 S.W.2d 840, 843 (Tex. Crim.App.1983); *Ex parte Morris,* 626 S.W.2d 754 (Tex.Crim.App.1982); *Hurd,* 613 S.W.2d at 744; *Ex parte Tarlton,* 582 S.W.2d 155 (Tex.Crim.App.1979); *Ex parte Iglehart,* 535 S.W.2d 185 (Tex.Crim.App.1976); *Esquivel,* 531 S.W.2d at 341; *Ex parte Downey,* 471

S.W.2d 576 (Tex.Crim.App.1971); *Ex parte Bates,* 538 S.W.2d 790 (Tex.Crim.App.1976).

8. *Ex parte Williams,* No. 73,845, 2001 WL 356290 (Tex.Crim.App. April 11, 2001); *Ex parte Tovar,* 901 S.W.2d 484, 486 (Tex.Crim. App.1995).

9. *Compare Ex parte Busby,* No. 73,797, 2001 WL 219375 (Tex.Crim.App. March 7, 2001) (denial of time credits due to erroneous release warrants relief; implicitly finding harm element of habeas corpus established), *with Williams, supra* (failure to show harm from erroneous release to probation where no claim made of denial of time credits).

10. Former Art. 42.18, § 8(b)(1) (now TEX. GOV'T CODE § 508.145(f)).

11. Former Art. 42.18, § 8(d)(3) (now TEX. GOV'T CODE § 508.150(c)(2)).

ceived credit back to August 7, 1989. When he was released to parole on April 5, 1990, he had served 242 calendar days on his sentence. The record does not reflect how much good time he had accumulated at this point, but Millard does not allege that he was lacking enough good time to be eligible for parole on the burglary sentence. We will assume, as Millard and the trial court do, that Millard had accumulated a sufficient amount of good time such that his total time credits equaled one-fourth of his burglary sentence at the time of his release on April 5, 1990.

But regardless of Millard's technical eligibility for parole on the burglary case, the fact remains that he had another sentence—the criminal mischief sentence—stacked onto the burglary sentence. So Millard's eligibility for parole was governed by former Art. 42.18, § 8(d)(3).[12] As noted, that statute prevented Millard's release to parole until he became eligible for parole on the last sentence he was serving, the criminal mischief sentence.

Millard's four-year criminal mischief sentence began on April 5, 1990, which was effectively the date the parole panel designated as the date Millard would have been eligible for release on parole if he had been sentenced to serve that single sentence.[13] But Millard was not actually eligible for release on parole, since the four-year sentence began on that date and he was not eligible for release on parole on that second sentence.[14] Therefore, as to the burglary sentence, Millard was erroneously released because he should have been retained in prison not only to begin his second, cumulated sentence but also to continue serving the first. As to the criminal mischief sentence, Millard was erroneously released because he was not yet eligible for parole consideration since the judgment in that case only granted credit for 99 days of pretrial jail time. Consequently, Millard's release was erroneous as to both sentences.

## E.

This conclusion is consistent with our recent decision in *Kuester*. In *Kuester*, we addressed the proper computation of time on stacked sentences. We concluded that an inmate serving stacked sentences begins serving his second sentence when his first sentence ceases to operate, which means the date it is served out in full day-for-day or the date when a parole panel approves the inmate for parole release.[15] We explained that, when the first sentence ceases to operate and the second sentence begins, the inmate continues to serve the first sentence while he serves the second sentence.[16] In passing, we stated that when an inmate begins serving the second sentence, he is "paroled," so to speak, on his first sentence.[17] Of course, the inmate does not literally parole his first sentence since he is not released from the custody of TDCJ. On the contrary, the statute makes clear that an inmate may not be released to parole on the first sentence until he is eligible for parole on the second sentence.[18] Nothing in *Kuester* altered this clear Legislative mandate.

## Conclusion

Millard is entitled to credit on both sentences from April 5, 1990, to November 11,

12. Now Tex. Gov't Code § 508.150(c)(2).

13. *Kuester,* 21 S.W.3d at 271.

14. Former Art. 42.12 § 8(d)(3) (now Tex. Gov't Code § 508.150(c)(2)).

15. *Kuester,* 21 S.W.3d at 266–71.

16. *Id.* at 272.

17. *Id.* at 272–73.

18. Former 42.18, § 8(d)(3) (now Tex. Gov't Code § 508.150(c)(2)).

1994, the period of time he was out of custody due to an erroneous release through no fault of his own.[19] To the extent Millard has not received all of that credit on the sentences, the Texas Department of Criminal Justice, Institutional Division, is ordered to grant Millard additional credit so that he receives credit from April 5, 1990, to November 11, 1994, in cause numbers 3144 and 89–09–3267–CRW from the 143rd Judicial District Court of Ward County.

KELLER, P.J., filed a dissenting opinion.

WOMACK, J., filed a dissenting opinion.

JOHNSON, J., filed a concurring and dissenting opinion in which MEYERS, J., joined.

KELLER, P.J., filed a dissenting opinion.

In *Kuester*[1], our Court declined to interpret "completion of the sentence" to mean "discharge in full," saying that such an interpretation could, if the inmate died while on parole for the first sentence, lead to an absurdity. The "absurdity" was that such an inmate, "would never be punished at all by the second sentence, as he would never even begin serving it."[2] I agree that that is an absurdity, but that is what is happening in this case.

It also seems absurd to me that an inmate could ever shorten a sentence by incurring a second sentence—and a stacked one, at that. But that also is happening in this case. According to the Court's opinion in *Kuester* and its opinion today, because of applicant's violation of

parole on stacked sentences, his first sentence is shortened by four and a half years, and he will never serve his second sentence at all.

For a time, the Texas Department of Criminal Justice and the Board of Pardons and Paroles calculated eligibility for parole on stacked sentences by adding the two terms and figuring parole eligibility based on the total.[3] In 1997, a policy change resulted in time calculations on each successive case being figured singularly and sequentially.[4] In *Kuester*, we considered the question of how parole eligibility for stacked sentences ought to be calculated, and decided the issue in a manner that I determined was not required by the statutory language and was directly contrary to the intent of the Legislature. The effect of our holding is that, after an inmate is designated for parole on his first sentence, his sentences run concurrently rather than consecutively. Because the earlier method of calculation was in effect from 1987 until 1997, this is the first of ten years worth of cases where stacking sentences will not only fail to achieve the purpose of stacking, but in some instances actually *decrease* the punishment of felons who violate their conditions of parole. I would avoid this anomaly by confining our "erroneous release" jurisprudence to its original realm.[5]

Despite the fact that stacked sentences will, under *Kuester*, necessarily run concurrently upon an inmate being designated for parole, I believe that the Court goes further than it needs in its holding today. In *Kuester*, we did not reach the question of time credits upon erroneous release because Kuester was not erroneously re-

---

**19.** *Kuester,* 21 S.W.3d at 271–73.

**1.** *Ex parte Kuester,* 21 S.W.3d 264 (Tex.Crim. App.2000).

**2.** *Id.* at 264.

**3.** *Id.* at 265.

**4.** *Id.*

**5.** *Id.* at 274 (Keller, J. dissenting).

leased—he was actually eligible for parole on both his sentences on the day he was released to parole.[6]

In this case, applicant was in fact eligible for parole on the first sentence when he was released. He then violated his parole and parole was revoked. The Legislature has declared that, upon revocation of parole, time credit is not to be awarded for time spent on parole.[7] The Court, however, awards applicant credit for the time he was released to parole on the first sentence because he should have been held in prison on the second sentence. It seems to me perverse to say that applicant was erroneously released on the *first* sentence—because he wasn't. In every respect relevant to the first sentence, his release was proper. The only factor that could render his release erroneous is the existence of the second sentence. If anything, he was erroneously released on the *second* sentence because he had not yet achieved parole eligibility for it.

Since applicant's release to parole on the first sentence was proper, and his parole was later revoked, he should forfeit the time he served on parole, in accordance with § 508.283(b).

I respectfully dissent.

WOMACK, J., filed a dissenting opinion.

Because I hold that the procedure of Article 11.07 of the Code of Criminal Procedure is not available for an application that does not "seek relief from a felony judgment" (*id.*, section 1), I would dismiss this application that seeks relief from an administrative decision of the Department of Criminal Justice. *See Ex parte Whiteside*, 12 S.W.3d 819, 822 (Tex.Cr.App.2000) (Womack, J., concurring).

JOHNSON, J., joined by MEYERS, J., concurring and dissenting.

It appears to me that, as the majority sets out, applicant was improperly released on the conviction for criminal mischief and that he is entitled to credit for the time spent at liberty. It also appears to me that his sentence in that conviction has now been discharged. However, as Judge Keller's dissent points out, he was properly released on parole for his conviction for burglary and is not entitled to credit on that charge for the time spent at liberty. *Post*, at 195 (Keller, P.J., dissenting). Therefore, I concur in the judgment of the majority crediting applicant with time on his sentence for criminal mischief, but dissent to its judgment crediting applicant with time on his sentence for burglary.

In *Ex parte Kuester*, 21 S.W.3d 264 (Tex.Crim.App.2000), the applicant had consecutive sentences of ten years and four years. When TDCJ ID received the information on the second sentence, it recalculated his parole eligibility by cumulating the sentences to reflect a sentence of fourteen years, as was the practice at the time. *Id.* at 265. Thereafter, in 1992, Kuester was released on parole. In 1997, after his 1993 revocation on the combined sentence, TDCJ-ID revised its procedures for calculating parole eligibility such that inmates did not accrue time credit for consecutive sentences until the prior sen-

---

**6.** In fact, Kuester did not even seek time credit on both sentences. His claim was that he was erroneously released on his first sentence. *Id.*

**7.** "If a person's parole, mandatory supervision, or conditional pardon is revoked, the person may be required to serve the remaining portion of the sentence on which the person was released. The remaining portion is computed without credit for the time from the date of the person's release to the date of revocation." TEX. GOV'T CODE § 508.283(b).

tence(s) had "ceased to operate." *Id.* Under the new procedures, Kuester was credited with beginning to serve the second sentence only after the Board of Pardons and Paroles ruled that the first sentence had "ceased to operate." *Id.* In his writ application, Kuester complained that TDCJ–ID was not giving him credit on the second sentence for pretrial jail time, prison time before his release to parole, or all of the time served since his revocation. He also sought credit for the time spent on parole, arguing that he had been released erroneously in 1992 because of the method used to calculate parole eligibility. *Id.* at 266.

After considering what meaning should be placed on "ceased to operate," we held that it means the point at which the Board of Pardons and Paroles would have released the inmate on parole but for a pending consecutive sentence. *Id.* at 270. We went on to determine that, even using the procedures which came into use five years after his original release, Kuester had sufficient credit for proper parole on both cases and had not been erroneously released. We therefore denied credit on both cases for the time spent on parole.[1] *Id.* at 271–2.

The facts here are similar in some respects to the facts in Kuester's request for credit for time spent on parole. Applicant had accrued sufficient time on the burglary sentence to be eligible for parole and was properly paroled on the burglary charge. While he should have been retained in prison to begin serving the second sentence, his parole and release as to the burglary charge were proper. He is, therefore, not entitled to credit on that charge for the time he spent on parole, and may be required to serve out whatever

time remained on his sentence at the time of his release.

In contrast, the applicant here had accrued no time in prison as to the second sentence and did not have enough time credit from other sources to be eligible for parole at that time. Because release on the second charge was, in fact, erroneous, applicant is entitled to credit for the time spent at liberty. That time exceeds the length of the second sentence, and the second sentence is therefore discharged.

---

1. Because of the disposition of the question of credit for time spent on parole, the other issues of time credit found in *Kuester* are not germane in this case.