In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00155-CV


______________________________




IN THE MATTER OF THE MARRIAGE OF


GLORIA C. MCDONALD AND JAMES W. MCDONALD


AND IN THE INTEREST OF JAMIE SUE MCDONALD


AND KELLY MARIE MCDONALD, MINOR CHILDREN




 


On Appeal from the 309th Judicial District Court


Harris County, Texas


Trial Court No. 99-07075




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Carter



O P I N I O N



I. Factual and Procedural Background

 This case involves an appeal from a post-divorce Clarifying Order found within the body of
a Qualified Domestic Relations Order (QDRO). In four points of error, James W. McDonald asks
us to set aside the Clarifying Order, contending the trial court erred by entering an order that
(1) divests him of his future separate property, (2) grants Gloria McDonald rights to pension benefits
that will be earned as a result of James' post-divorce employment options, (3) circumvents the federal
pre-emption of alienation of benefits granted under the Employee Retirement Income Security Act
of 1974 (ERISA), and (4) substantively changes the award of property found in the parties' original
decree of divorce.

 James, a long-time employee of the public school system, accumulated pension benefits with
the Teacher Retirement System of Texas (TRS) during his marriage to Gloria. Subject to the terms
and conditions of a QDRO signed simultaneously with a final divorce decree, Gloria was awarded
one half of the benefits of the TRS plan after the deduction of $5,000.00. No other directives were
given in the final divorce decree in relation to the distribution of the TRS plan.

 As a benefit to James, the TRS plan provides that, if his employment is terminated for any
reason, he has the right to request a payout of his pension in a one-time lump sum payment. In
addition, if James requests a lump sum payment from TRS but later regains employment with the
school system, the plan allows him to replenish his previously withdrawn benefit in order to restore
his annuity to the prewithdrawal level. While James' annuity can be restored under the plan, Gloria's
cannot; nevertheless, as an alternate payee, Gloria is bound by James' election. Should James
exercise his option to receive a lump sum payment, Gloria's benefits would be substantially reduced. 
 In order to prevent this potential loss of benefits, Gloria filed an opposed motion to enter and
division of assets in which she asserted the need for a new QDRO. The trial court thereafter held
a hearing and, over James' objection, signed a QDRO, modified by the inclusion of a Clarifying
Order.

II. Discussion

 Before addressing the merits of James' appeal, we must determine whether error was properly
preserved and whether ERISA's antialienation provisions apply in this case. Concerning
preservation, Gloria contends James waived or failed to preserve error when he did not object or
specifically challenge the trial court's findings of fact and conclusions of law. By complaining of
the trial court's Clarifying Order being entered as part of the new QDRO, however, James properly
preserved error when he timely filed his motion for new trial, which was subsequently denied by
written order. See McClary v. Thompson, 65 S.W.3d 829, 833 (Tex. App.-Fort Worth 2002, pet.
denied). As for ERISA, James incorrectly asserts in his third point of error that the TRS plan is
subject to the antialienation provisions of Title I. Despite ERISA's comprehensiveness, Congress
specifically excluded governmental employee benefit plans from coverage. 29 U.S.C.A.
§ 1003(b)(1) (West 1999). The TRS plan "established or maintained for its employees . . . by the
government of [the State of Texas] or political subdivision thereof, or by any agency or
instrumentality of . . . the foregoing," falls neatly into the definition of a governmental plan and is
not, therefore, subject to Title I of ERISA. 29 U.S.C.A. § 1002(32) (West 1999).

 Having determined that error was properly preserved and that ERISA's antialienation
provisions do not apply in this case, we reach the merits of James' appeal. In his first, second, and
fourth points of error, James contends the Clarifying Order does not facilitate a just and right
division of property under the original divorce decree; instead, it improperly divests him of his
separate property by substantively changing the distribution of property in the final divorce decree. 
Specifically, James contends that, once he withdraws his accumulated benefits from the TRS plan
and Gloria receives her court-ordered share, any subsequent action on his part relating to TRS
benefits involves only his separate property and is outside the trial court's authority to divide. Gloria,
however, contends the Clarifying Order simply protects her community interest in the pension and,
at most, imposes a fiduciary duty on James. 

 In a divorce, a trial court shall divide the parties' marital estate in a manner that the court
determines is just and right, having regard for the rights of each party and any children of the
marriage. Tex. Fam. Code Ann. § 7.001 (Vernon 1998). Once the marital estate is divided,

 A court may not amend, modify, alter, or change the division of property made or
approved in the decree of divorce or annulment. An order to enforce the division is
limited to an order to assist in the implementation of or to clarify the prior order and
may not alter or change the substantive division of property. 

Tex. Fam. Code Ann. § 9.007(a) (Vernon 1998). An order that amends, modifies, alters, or changes
the division of property made or approved in a final decree of divorce is beyond the trial court's
power and is unenforceable. Tex. Fam. Code Ann. § 9.007(b) (Vernon 1998). If the trial court
finds the original form of the division of property is not specific enough to be enforceable by
contempt, it may render a clarifying order setting forth specific terms to enforce compliance with the
original division of property awarded by the divorce decree. See Tex. Fam. Code Ann. § 9.008
(Vernon 1998).

 Clarifying orders may more precisely specify the manner of carrying out the property division
previously ordered so long as the substantive division of the property is not altered. See McPherren
v. McPherren, 967 S.W.2d 485, 490 (Tex. App.-El Paso 1998, no pet.); Dechon v. Dechon, 909
S.W.2d 950, 956 (Tex. App.-El Paso 1995, no writ). Clarification also requires a finding, express
or implied, that the original form of the division of property lacks sufficient specificity to be enforced
by contempt. Tex. Fam. Code Ann. § 9.008(b); In re Alford, 40 S.W.3d 187, 189 (Tex.
App.-Texarkana 2001, no pet.). If a divorce decree is unambiguous, the court has no authority to
alter or modify the original disposition of property. Haworth v. Haworth, 795 S.W.2d 296, 300
(Tex. App.-Houston [14th Dist.] 1990, no writ).

 We review a trial court's clarifying order for an abuse of discretion. A trial court abuses its
discretion when it acts in an unreasonable and arbitrary manner or without reference to any guiding
rules or principles, Schneider v. Schneider, 5 S.W.3d 925, 929 (Tex. App.-Austin 1999, no pet.),
or erroneously exercises its power by making a choice that was not within the range of choices
permitted the court by law, Reyna v. Reyna, 738 S.W.2d 772, 775 (Tex. App.-Austin 1987, no writ).

 In this case, the final divorce decree and the accompanying QDRO awarded Gloria fifty
percent of the total benefits accrued under the TRS plan as of June 22, 2000. The Clarifying Order,
however, modifies the final divorce decree's distribution of property in such a way that goes beyond
facilitating the distribution of her fifty-percent share of the TRS plan benefits. Under the terms of
the Clarifying Order, should James elect to take a lump sum payment of his accrued benefits under
the TRS plan and subsequently replenish the fund to preserve his annuity, he would be expressly
required to pay Gloria's share to her, in monthly installments, as if those payments were made in the
form of a single life annuity. (1) This is a substantive change to the final divorce decree and is outside
the scope of the trial court's authority.

 The Clarifying Order not only grants Gloria fifty percent of any lump sum payment-an
amount authorized by the final divorce decree-but also grants installment payments from funds
acquired after the divorce. If James, after electing to receive a lump sum payment of his plan
benefits, chooses to resume employment in the educational system and replenish the funds and pay
a reinstatement fee to restore his annuity under the TRS plan, the terms of the Clarifying Order 
entitle Gloria to reimburse James an amount equal to his proportionate share of the redeposited
contributions and the reinstatement fee. Upon Gloria's reimbursement of these amounts, James is
ordered to remit to her monthly payments.

 The divorce is final. To reinstate James' annuity, he must (1) discontinue his employment
and withdraw his retirement benefits, whereup on Gloria would receive her fifty-percent share, and
(2) resume employment in the Texas educational system and redeposit the funds, plus fees. Under
this scenario, these divorced parties would have received their fifty-percent interest in the retirement
account; therefore, any funds used to reestablish this annuity would not be from community property,
but from funds or earnings no longer subject to division. To permit the trial court's "clarification"
of the final divorce decree in this manner is an unauthorized substantive change. 

III. Conclusion

 Since the trial court abused its discretion by substantively changing the final divorce decree's
distribution of property, we reverse and render judgment, setting aside the trial court's Clarifying
Order.




 Jack Carter

 Justice


Date Submitted: August 27, 2003

Date Decided: September 4, 2003





1. The Clarifying Order, in pertinent part, states: 


 13. The following paragraphs of this Order are not intended to be portions of the
Qualified Domestic Relations Order above, but are intended to be additional orders
of the Court related to the Plan nonetheless. . . . .


 14. . . . .

 a. In the event James W. McDonald requests and receives a withdrawal of
accumulated contributions plus (plus accumulated earnings) as of June 22,
2000, plus earnings in accordance with the terms of Plan from June 22, 2000,
in effect denying Gloria C. McDonald any annuity benefits under the Plan,
and subsequently re-deposits the amount withdrawn plus a reinstatement fee
in order to reinstate James W. McDonald's right to receive an annuity, James
W. McDonald shall pay to Gloria C. McDonald a monthly amount equal to
the amount provided in Paragraph 5 et seq. above, under the same terms and
conditions as if those payments were made in the form of a single life annuity
by the Plan pursuant to this Order. 


nt 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No.
06-11-00066-CR

                                                ______________________________

 

 

 

                                                   IN
RE:  JAMIE LEE BLEDSOE

 

 

                                                                                                  


 

                                                                                                                            


                                                     Original
Mandamus Proceeding

 

                                                                                                  


 

 

 

 

                                          Before
Morriss, C.J., Carter and Moseley, JJ.

                                              Memorandum
Opinion by Justice Carter

                                                                              

                                                                              








                                                      MEMORANDUM
OPINION

 

            Jamie Lee Bledsoe has petitioned
this Court for mandamus relief, naming as respondent the 71st Judicial District
Court of Harrison County, Texas.  Bledsoe
asks this Court to order the trial court to grant his motion for judgment nunc
pro tunc, in order to correctly credit Bledsoe with actual time served for
which no credit was given.

            The proceedings giving rise to this
petition begin with Bledsoes conviction in February 2001 for the offense of
possession of a controlled substance in cause number 99-0124x in the 71st Judicial
District Court of Harrison County, Texas. 
According to his petition, Bledsoe was sentenced to fifteen years imprisonment
for that offense.  Bledsoes petition
alleges that he was released on parole in January 2006.  Thereafter, on September 26, 2007, Bledsoe
alleges he was arrested for the offense of burglary of a building in cause
number 07-0366x.[1]  Bledsoe alleges that on October 4, 2007, the
Texas Board of Pardons and Paroles issued a pre-revocation warrant on
allegations Bledsoe violated the terms of his parole.  Bledsoe alleges he remained incarcerated in
the Harrison County jail from September 26, 2007 until January 28, 2008, at
which time he was transferred to the East Texas Intermediate Sanction Facility
in Henderson, Texas, where he remained until March 13, 2008, when the Board of
Pardons and Paroles lifted the warrant.  Bledsoe
contends that he was not given credit for time served from September 26, 2007
through March 13, 2008, for a total of 168 days.[2]

            When a defendant has been denied
credit for jail time to which he is entitled, the preferred practice is for the
trial court to enter a nunc pro tunc order authorizing credit for the
appropriate time.  Ex parte Forooghi, 185 S.W.3d 498, 499 (Tex. Crim. App. 2006)
(Johnson, J., concurring statement); Ex
parte Ybarra, 149 S.W.3d 147 (Tex. Crim. App. 2004) (inmate seeking
pretrial time credit must first request credit for the claimed time by filing a
motion for a judgment nunc pro tunc in the convicting court, and if denied,
file a petition for writ of mandamus to the appropriate court of appeals); Ex parte Evans, 964 S.W.2d 643, 645, n.2
(Tex. Crim. App. 1998).  

            Here, Bledsoe avers that he filed a
motion for a judgment nunc pro tunc in the trial court[3] in
November 2009, and refers to Exhibit B attached to the January petition
Bledsoe filed with this Court.  Exhibit
B is captioned Motion for Judgment Nunc Pro Tunc, and asks the trial court
to credit flat time toward fulfillment of Bledsoes sentence for the 168 day
period he was incarcerated pursuant to the pre-revocation warrant.[4]  

            There is no indication that the
motion for judgment nunc pro tunc was filed in the trial court.[5]  There is no file mark on the motion.[6]  See
Tex. R. App. P. 52.7(a)(1)
(requiring certified or sworn copy of every document material to relators
claim for relief and filed in any underlying proceeding).  Furthermore, the record does not include any
documentation verifying the dates and events (short of a copy of the indictment
for burglary of a habitation) alleged to be the basis of Bledsoes time-credit
claim.

            A relator must furnish a record
sufficient to support his claim for mandamus relief.  See
Tex. R. App. P. 52.7(a).  Since Bledsoe has not furnished such a
record, we cannot conclude that he is entitled to mandamus relief.

            Accordingly, we deny Bledsoes
petition for writ of mandamus.

 

                                                                        Jack
Carter

                                                                        Justice

 

Date
Submitted:          April 7, 2011

Date
Decided:             April 8, 2011

 

Do
Not Publish











[1]Bledsoe
refers to Exhibit C attached to a previous petition for writ of mandamus
filed with this Court in January 2011 on the same issue, in cause number
06-11-00003-CR, styled In re Jamie Lee Bledsoe.  That petition was dismissed for lack of
jurisdiction.  Exhibit C is a file-marked
copy of the indictment against Bledsoe for the charge of burglary of a
building.  Because the previous petition
was filed by Bledsoe, and was based on the same facts giving rise to this
petition, we will take judicial notice of those exhibits previously provided to
this Court in cause number 06-11-00003-CR. 
See Joe Williamson Constr. Co. v.
Raymondville Indep. Sch. Dist., 251 S.W.3d 800, 802 n.2 (Tex. App.Corpus
Christi 2008, no pet.) (court of appeals may take judicial notice of files from
related mandamus proceeding).





[2]Bledsoe
claims this time should be credited against his sentence in trial court cause
number 99-0124x.

 





[3]Bledsoe
further maintains that he has satisfied the administrative requirements of
Section 501.0081(b) of the Texas Government Code, which provides, with one
exception, that an inmate must first attempt to resolve a time-credit complaint
through administrative procedures before he or she may raise such a claim in an
application for a writ of habeas corpus.  See Tex.
Govt Code Ann. § 501.0081 (Vernon 2004).  Exhibit A is an original offender grievance
form regarding Bledsoes time-credit complaint, which indicates submission to
the Time Dispute Department in Huntsville on April 1, 2009.  The record does not indicate what action, if
any, was taken with respect to this complaint. 
Because Bledsoe has filed a petition for writ of mandamus, rather than
an application for a writ of habeas corpus, the administrative requirements of Section
501.0081 are not applicable here.  

 





[4]In
the motion, and in this petition, Bledsoe relies on Ex parte Canada, 754 S.W.2d 660 (Tex. Crim. App. 1988), for the
proposition that he is entitled to the pre-revocation credit.  That case held that any time spent in
confinement pursuant to the execution of a parole pre-revocation warrant cannot
be denied a parolee.  Id. at 668; see also Ex parte Adams,
941 S.W.2d 136, 137 (Tex. Crim. App. 1997) (prisoner who has been paroled
entitled to credit for all periods  he or
she was confined pursuant to parole violator warrant).  It is also true that an inmate has no right
to credit on his or her sentence for time served in an intermediate sanction
facility as a special condition of parole. 
Id. at 13738.

 





[5]In
his petition, Bledsoe states that the motion for judgment nunc pro tunc was
filed in November 2009.  The motion for
judgment nunc pro tunc labeled Exhibit B lists a service date of July 10,
2010.  

 





[6]The
office of the District Clerk of Harrison County have confirmed that a motion
for judgment nunc pro tunc was not filed in either cause number 07-0366x or
99-0124x.