NUMBER 13-98-395-CR


COURT OF APPEALS


THIRTEENTH DISTRICT OF TEXAS


CORPUS CHRISTI - EDINBURG




HUMBERTO ESPINOZA ZAVALA, Appellant,

v.


THE STATE OF TEXAS, Appellee.




On appeal from the 92nd District Court


of Hidalgo County, Texas.






M E M O R A N D U M O P I N I O N



 Before Chief Justice Valdez and Justices Hinojosa and Castillo


 



 Opinion by Chief Justice Valdez

 Appellant, Humberto Zavala, appeals his conviction for third-degree aggravated
assault of a peace officer. See Tex. Pen. Code Ann. § 22.02 (Vernon 2001). (1) By six
issues, appellant argues: (1) he is entitled to a new trial because the reporter's record is
incomplete; (2) the trial court erred in submitting Geesa reasonable doubt instructions; (3)
the trial court abused its discretion by not admitting relevant evidence; (4) the trial court
improperly admitted a police report; (5) the trial court erred in failing to award him credit for
his pretrial incarceration; and (6) he received ineffective assistance of counsel. We affirm. 

I. Facts and Procedural History

 As this is a memorandum opinion and the parties are familiar with the facts, we will
not recite them here, except as necessary to advise the parties of the Court's decision and
the basic reasons for it. See Tex. R. App. P. 47.4.

II. Discussion 

A. Incomplete Record

 By his first issue, appellant argues he is entitled to a new trial because part of the
reporter's record is incomplete. He contends the record is missing the transcripts from
pretrial hearings, which he argues are necessary for his appeal. Specifically, appellant
argues the missing reporter's records are necessary for appellant to raise claims for
violations of a plea-bargain agreement and a right to a speedy trial. See Barker v. Wingo,
407 U.S. 515, 515 (1972); Santobello v. New York, 404 U.S. 257, 262 (1971). 

 When a reporter's record is lost or destroyed, an appellant is entitled to a new trial
under the following circumstances:

(1) if the appellant has timely requested a reporter's record;

(2) if, without the appellant's fault, a significant exhibit or a significant portion
of the court reporter's notes and records has been lost or destroyed or-if the
proceeding were electronically recorded-a significant portion of the recording
has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record . . . is
necessary to the appeal's resolution; and 

(4) if the parties cannot agree on a complete reporter's record.


Tex. R. App. P. 34.6(f) (emphasis added). (2) Appellate courts conduct a harm analysis in
determining if the missing record is necessary for the resolution of the appeal. Issac v.
State, 989 S.W.2d 754, 757 (Tex. Crim. App. 1999). If the lost or destroyed record is not
necessary to the appeal's resolution, "then the loss of that portion of the record is harmless
under [rule 34.6(f)]," and a new trial will not be required. Id. A missing reporter's record
does not require an automatic reversal and does not prevent an appellate court from
conducting a harm analysis. Id. The appellant must establish that the missing portion of
the record "is necessary to the appeal's resolution." Routier, 112 S.W.3d 554, 571 (Tex.
Crim. App. 2003); Doubrava v. State, 28 S.W.3d 148, 151 (Tex. App.-Eastland 2000, no
pet.).

 Appellant relies on Santobello v. New York, 404 U.S. at 257, to argue that the
missing reporter's records prevent him from proving the State did not honor a prior plea-bargain agreement. In Santobello, the defendant was charged with two counts of gambling
and initially entered a plea of not guilty. Id. at 258. The defendant later pleaded guilty to
a lesser offense after the prosecutor promised not to make a sentencing recommendation
to the trial court. Id. After sentencing was delayed because of a missing pre-sentence
report, the defendant acquired new counsel, and a new prosecutor and judge also took
over. Id. at 259. The new prosecutor, who was unaware of the original plea agreement,
recommended a one-year sentence, and the trial court imposed the maximum one-year
sentence. Id. The Supreme Court reversed and remanded reasoning that the
"adjudicative element inherent in accepting a plea of guilty" requires that the plea bargain
be honored if the "plea rests in any significant degree on a promise or agreement of the
prosecutor." Id. at 263. 

 Unlike the defendant in Santobello, appellant rejected the plea agreement, elected
to have a jury trial on the issue of guilt, and elected to have the judge assess punishment. 
The record does not support appellant's contention that the State violated any plea-bargain
agreement.

 Further, appellant's contention that the missing pre-trial appearances are necessary
to raise a speedy trial claim are not supported by the record. The clerk's record and the
trial court findings show that appellant's initial pre-trial appearances with his attorney of
record were merely status hearings which set the dates for trial. Moreover, we note that
part of the delay in appellant's prosecution occurred when appellant fled the courtroom
after he rejected the plea-bargain agreement and before a jury was selected. Accordingly,
we conclude that the loss of the reporter's records are harmless and the records are not
necessary for the resolution of this appeal. See Tex. R. App. P. 34.6(f); Issac, 989 S.W.2d
at 757. 

 Appellant's first issue is overruled.

B. Geesa Instruction

 By his second issue, appellant argues the trial court committed reversible error when
it gave the jury a Geesa instruction defining reasonable doubt because appellant did not
agree to the submission of the Geesa instruction. See Geesa v. State, 820 S.W.2d 154,
162 (Tex. Crim. App. 1991), overruled by Paulson v. State, 28 S.W.3d 570, 573 (Tex. Crim.
App. 2000). 

 We review a challenge to a jury charge under an Almanza error analysis. See
Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Under this standard, we
determine: (1) whether the jury charge contains error; and (2) whether the harm requires
reversal. Mann v. State, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); Benn v. State, 110
S.W.3d 645, 648 (Tex. App.-Corpus Christi 2003, no pet.). 

 In Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991), the court of criminal
appeals required that a specific definition (3) of reasonable doubt be given to the jury in all
criminal cases. Id. at 162. The court of criminal appeals overruled Geesa in October of
2000 reasoning that a conscientious juror reading the Geesa instructions would never
convict anyone because the Geesa definition is "redundant, confusing, and logically
flawed." Paulson v. State, 28 S.W.3d 570, 573 (Tex. Crim. 2000). The Paulson court
decided that no definition of reasonable doubt should be given to the jury, but held that it
is not reversible error to give a Geesa instruction if both the defendant and prosecutor
agree. Id. Finally, in Colbert v. State, 108 S.W.3d 316, 319 (Tex. Crim. App. 2003), the
court of criminal appeals held that Paulson would not be applied retroactively to cases
properly tried with Geesa instructions. Id. 

 Here, Geesa was good law at the time the case was tried. The record shows this
case was properly tried in compliance with Geesa. Because Paulson does not apply
retroactively, the issuance of the Geesa instruction was not error. See id.; Mann, 964
S.W.2d at 641.

 Appellant's second issue is overruled. 

C. Exclusion of Evidence

 By his third issue, appellant argues the trial court committed reversible error in
excluding photographs of his wife, which showed injuries caused by the police officers who
arrested appellant. Specifically, appellant contends the photographs establish that Officer
Santiago Galvan and Officer Juan J. Garza conspired to fabricate charges against
appellant in order to cover up the use of excessive police force. 

 We review a trial court's decision on the admissibility of evidence for an abuse of
discretion, and its ruling will not be disturbed as long as it falls within the zone of
reasonable disagreement. Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003);
Goff v. State, 931 S.W.2d 537, 553 (Tex. Crim. App. 1996). Texas Rule of Evidence 401
defines relevant evidence as "evidence having any tendency to make the existence of any
fact that is of consequence to the determination of the action more probable or less
probable than it would be without the evidence." Tex. R. Evid. 401. This rule requires
evidence to be both material and probative before it is admissible. Miller v. State, 36
S.W.3d 503, 507 (Tex. Crim. App. 2001). 

 Evidence is material if it addresses a "material proposition, i.e., 'any fact that is of
consequence to the determination of the action.'" Id. (quoting 1 Steven Goode et al.,
Texas Practice: Guide To The Texas Rules of Evidence: Civil and Criminal § 401.1 (2d
ed. 1993 & Supp. 1995)). If the evidence is material, then the proponent must also show
that "the evidence is probative, i.e., the proffered evidence must tend to make the
existence of the fact 'more or less probable than it would be without the evidence.'" Id.
(quoting 1 Steven Goode et al., Texas Practice: Guide To The Texas Rules of Evidence:
Civil and Criminal § 401.1 (2d ed. 1993 & Supp. 1995)). If the proponent establishes that
the evidence is both material and probative, then the evidence is admissible unless it is
otherwise barred by the Constitution, statutes, or other rules of evidence. See Tex. R.
Evid. 402. 

 Here, the indictment charged that appellant assaulted Officer Santiago Galvan, a
peace officer, by intentionally kicking Officer Galvan while he was attempting to arrest
appellant. The photographs show that Modesta Zavala, appellant's wife, sustained a
bruise on her right cheek and minor abrasions on her arms. They do not show the
existence of any conspiracy between Officer Galvan and Officer Garza. Further, they were
immaterial because they did not show whether appellant intentionally kicked Officer Galvan
while Officer Galvan lawfully attempted to arrest appellant. See Miller, 36 S.W.3d at 507. 
We conclude the trial court did not abuse its discretion in excluding collateral photographs
that did not address a fact that was of consequence to this case. See id.; see also Tex.
R. Evid. 401. 

 Appellant's third issue is overruled. 

D. Admission of Police Report

 By his fourth issue, appellant complains the trial court committed reversible error in
admitting Officer Galvan's police report, which provided a narrative of appellant's arrest. 
 Police reports are barred by the rules of evidence as inadmissible hearsay. See Tex.
R. Evid. 803(6), 803(8)(B); Cole v. State, 839 S.W.2d 798, 806 (Tex. Crim. App. 1990). 
However, the rule of optional completeness (4) allows for the admission of evidence that is
not otherwise admissible in order to fully explain a matter opened by the other party. 
Gutierrez v. State, 85 S.W.3d 446, 456 (Tex. App.-Austin 2002, no pet.). This rule is not
implicated until a party "attempts to have a portion [of the statement] given in evidence .
. . [and] the remaining parts of the [statement are] . . . necessary to a full understanding of
the evidence." Sauceda v. State, No. 612-02, 2003 Tex. Crim. App. LEXIS 308, at *15
(Tex. Crim. App. Sept. 10, 2003) (designated for publication) (quoting Washington v.
State, 856 S.W.2d 184, 186 (Tex. Crim. App. 1993)). 

 Here, appellant's attorney impeached Officer Santiago with the police report, 
regarding the length of time appellant and Officer Santiago struggled before appellant was
subdued, and on whether appellant attacked Officer Santiago with his right or left hand. 
Officer Santiago stated on cross-examination the entire encounter with appellant lasted
between five and six minutes, and that they wrestled on the ground for approximately one
and a half minutes. Further, on redirect examination, the State had Officer Santiago read
the following portion from his police report: "[I] [j]ust saw [appellant] turn over on his back
and his right hand took a swing at me. But he missed. With my left hand, I had his left
hand across his chest." The State then admitted, over appellant's hearsay objection,
Officer Santiago's police report. 

 Under these facts, we find it was error for the trial court to admit the police offense
report into evidence. The appellant never attempted to introduce the report into evidence
during cross-examination, and the State clarified the context of Officer Galvan's testimony
during redirect examination. The admission of the police report was not necessary to give
the jury a full understanding of Officer Galvan's testimony. See Sauceda, 2003 Tex. Crim.
App. LEXIS 308, at *15. However, we find the error was harmless. 

 Non-constitutional errors that do not affect the substantial rights of the appellant are
disregarded. See Tex. R. App. P. 44.2; Johnson v. State, 967 S.W.2d 410, 417(Tex. Crim.
App. 1998). The erroneous admission of evidence does not affect an appellant's
substantial rights "if the appellate court, after reviewing the record as a whole, has fair
assurance that the error did not influence the jury, or had but a slight effect." Motilla v.
State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (quoting Solomon v. State, 49 S.W.3d
356, 365 (Tex. Crim. App. 2001)). Factors relevant to this case in determining harmless
error include: (1) the nature of the evidence supporting the verdict; (2) the witnesses'
testimony; (3) whether the State emphasized the error; (4) and whether error was
cumulative. See Bagheri v. State, 119 S.W.3d 775, 763 (Tex. Crim. App. 2003). Although
the State introduced the police report into evidence, the report was cumulative of Officer
Galvan's unchallenged testimony. See Chamberlain v. State, 998 S.W.2d 230, 235 (Tex.
Crim. App. 1999) (stating erroneous admission of evidence is harmless error if same
evidence is elsewhere introduced without objection); see also Bagheri, 119 S.W.3d at 763.

 Appellant's fourth issue is overruled. 

E. Pre-Trial Jail Credit

 By his fifth issue, appellant argues the judgment should be reformed because the
trial court did not properly give him credit for time served. Appellant contends that he was
only given two days credit even though he was in jail on this charge from November 6,
1992 through February 4, 1997 and from February 9, 1998 through June 2, 1998. 

 The code of criminal procedure provides "[i]n all criminal cases, the judge of the
court in which the defendant was convicted shall give the defendant credit on his sentence
for the time that the defendant has spent in jail in said cause, other than confinement
served as a condition of community supervision, from the time of his arrest and
confinement until his sentence by the trial court." Tex. Code Crim. Proc. Ann. art. 42.03
§ 2(a) (Vernon Supp. 2004) (emphasis added). (5) 

 The record shows the trial judge entered a nunc pro tunc order crediting appellant
with 276 days of pretrial jail time for this cause, which covers his pretrial incarceration for
February 20 and 21, and from September 1, 1997 to June 1, 1998. Further, appellant
plead guilty to involuntary manslaughter (6) on March 23, 1993, which was an offense
unrelated to said cause. He was sentenced to seven years imprisonment and credited with
173 days on that sentence. Finally, although the record shows appellant was arrested on
November 6, 1992, it is unclear whether he was in custody for this offense or for the
involuntary manslaughter conviction. See Tex. Code Crim. Proc. Ann. art. 42.03 § 2(a)
(Vernon Supp. 2004); Steinocher, 2003 Tex. App. LEXIS 9045, at *8 (declining to reform
judgment where record is unclear on amount of credit to award). We conclude appellant
has not shown that he is entitled to additional credit on his sentence. (7) 

 Appellant's fifth issue is overruled. 

F. Ineffective Assistance of Counsel

 In his final issue, appellant claims his trial counsel was ineffective for failing to
secure a ruling on appellant's motion for a speedy trial, for presenting harmful witness
testimony during the punishment phase of trial, and for failing to have the trial court award
appellant proper jail time credit. 

 To show ineffective assistance of counsel, an appellant must satisfy the two-prong
Strickland test set by the Supreme Court. Strickland v. Washington, 466 U.S. 668, 687
(1984); Thompson v. State, 9 S.W.3d. 808, 812 (Tex. Crim. App. 1999). First, the
appellant must demonstrate that his counsel's performance fell below an objective
standard of reasonableness. Strickland, 466 U.S. at 688. "This requires showing that his
counsel made errors so serious that counsel was not functioning as the 'counsel'
guaranteed by the Sixth Amendment." Id. Second, the appellant must show the deficient
performance prejudiced his defense. Id.; Thompson, 9 S.W.3d at 812. Under the second
prong, the appellant must affirmatively prove prejudice by showing a "reasonable
probability that, but for counsel's unprofessional errors, the result of the proceedings would
have been different." Thompson, 9 S.W.3d at 812. Review of counsel's conduct is highly
deferential, and there is a strong presumption that counsel's conduct fell within a wide
range of reasonable professional assistance. Id. To defeat the presumption, ineffective
assistance must be firmly founded in the record. Id. at 814. The appellant must prove both
prongs of the Strickland test by a preponderance of the evidence. Tong v. State, 25
S.W.3d 707, 721 (Tex. Crim. App. 2000). 

 To determine if appellant's attorneys provided ineffective assistance for failing to
pursue a ruling on his speedy trial motion, we first determine if appellant had a viable
speedy trial claim. State v. Kelley, 20 S.W.3d 147, 151-52 (Tex. App.-Texarkana 2000,
no pet.). 

1. Speedy Trial Claim

 The Due Process Clause of the Fourteenth Amendment establishes a fundamental
right to a speedy trial. Barker v. Wingo, 407 U.S. 514, 530 (1972); Hull v. State, 699
S.W.2d 220, 221 (Tex. Crim. App. 1985). The Supreme Court implemented an ad hoc
balancing test and weighs the following factors when determining if an appellant's right to
a speedy trial is violated: (1) the length of delay; (2) the reasons for the delay; (3) the
appellant's assertion of his right; and (4) prejudice to the appellant. Barker, 407 U.S. at
530; State v. De Leon, 975 S.W.2d 722, 724 (Tex. App.-Corpus Christi 1998, no pet.). 
These factors, along with other relevant circumstances, must be considered together in
determining if an appellant's right to a speedy trial has been violated. Barker, 407 U.S. at
533. 

a. Length of Delay

 The length of delay is the triggering factor for the Barker analysis. Id. This requires
appellant to show some delay which is prejudicial before the other factors are balanced. 
Id. The length of delay is measured from the time appellant was formally accused or
arrested. Id. at 530. Here, there is a five year delay (8) from the time appellant was indicted
to the time he was tried. This is sufficient to trigger a Barker analysis. See Burgett v.
State, 865 S.W.2d 594, 597 (Tex. App.-Fort Worth 1993, pet. ref'd) (stating five year delay
sufficient to trigger Barker analysis but does not automatically establish a violation of the
right).

b. Reason For Delay

 Next, we consider the reason for delay. Deliberate attempts to delay the trial by the
State should weigh heavily against the State. See Barker, 407 U.S. at 531. More neutral
reasons such as overcrowded courts or negligence by the State is weighed less heavily
against the State, but still considered in the analysis since this responsibility rests with the
State. Id. We also consider valid reasons justifying the delay. Id. 

 Here, the record shows appellant was being prosecuted for an unrelated offense
while this case was pending. The record shows appellant pleaded guilty to committing
involuntary manslaughter (9) while out on bond for assaulting a police officer. Appellant
entered his plea for that offense on March 23, 1993. He was sentenced to seven years
imprisonment and, according to appellant, paroled on August 1, 1995. See Easley v.
State, 564 S.W.2d 742, 745 (Tex. Crim. App. 1978) (finding defendant's prosecution for
other crimes valid reason for delay). 

 The record also indicates that appellant was free from custody from August 1, 1995
through September 1, 1997. Further, appellant filed a motion (10) to set aside the indictment
for failure to receive a speedy trial on February 20, 1997. However, on June 17, 1997, the
date trial was to begin, appellant fled the courtroom after rejecting a plea-bargain offer by
the State. (11) Appellant's own elusive conduct strongly indicates he did not want a speedy
trial. See State v. Munoz, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999) (stating delay
attributable in whole or in part to defendant may waive speedy trial claim); Burgett, 865
S.W.2d at 597 (finding defendant's own elusive conduct delaying apprehension and trial
enough to waive speedy trial claim). We find this factor weighs in favor of the State. 

c. Assertion of Right to Speedy Trial

 The defendant's assertion of his right to a speedy trial claim is given strong
evidentiary weight in this analysis. Barker, 407 U.S. at 532. The more serious the
deprivation, the more likely appellant is to complain. Id. The Supreme Court also noted
that a defendant's failure to assert his rights makes it difficult to prove he was denied a
speedy trial. Id. Here, appellant first asserted his right to a speedy trial approximately four
years after being indicted. See Harris v. State, 827 S.W.2d 949, 957 (Tex. Crim. App.
1992) (noting that appellant's failure to timely demand a speedy trial indicates he did not
want a speedy trial). We find the four year delay in asserting the right to a speedy trial
weighs in favor of the State. 

d. Prejudice to Appellant

 Courts consider prejudice to a defendant based on the following three factors: (1)
preventing a defendant's oppressive pre-trial incarceration; (2) minimizing appellant's
anxiety and concern; and (3) limiting the possibility the defense will be impaired. Barker,
407 U.S. at 532. Here, appellant was incarcerated from March 23, 1993 through August
1, 1995 for an unrelated offense. He was not in jail for this offense from August 1, 1995
through September 1, 1997. Further, although appellant undoubtedly suffered anxiety and
concern, he does not claim that he was unable to put up a defense due to the delay in
prosecution. See id. We find this factor weighs in favor of the State. 

e. Conclusion

 Under these facts, we find appellant's elusive conduct determinative to show that
appellant did not want a speedy trial. See id. We conclude that appellant did not have a
valid speedy trial claim. Therefore, even if appellant's trial counsel had obtained a ruling
on this issue, it would not have caused a different result in the proceedings. See
Strickland, 466 U.S. at 688. 

2. Punishment Phase and Jail Credit

 In his final two sub-issues, appellant contends his trial counsel was ineffective for
presenting harmful testimony and for failing to ensure that appellant received proper jail
credit for his pre-trial incarceration. Appellant argues Angela Reyes gave harmful
testimony during the punishment phase of trial after being called to the stand by appellant's
trial counsel. Reyes stated that appellant had previously been involved in a fight. 
However, appellant does not show that counsel's conduct in calling this witness to the
stand fell below an objective standard of reasonableness, or that there is a reasonable
probability the outcome would have been different. See id. Finally, we find appellant did
not prove he was entitled to more jail-time credit. Therefore, we conclude he did not meet
his burden of proving that his trial counsel's conduct fell below an objective standard of
reasonableness on these two points. See id. 

 Appellant's final issue is overruled. 

G. Conclusion

 Having overruled all of appellant's issues, we affirm the judgment of the trial court. 
 

 

 

 Rogelio Valdez,

 Chief Justice


Do not publish

Tex. R. App. P. 47.2(b).

 

Opinion delivered and filed

this 11th day of March, 2004.
1. Appellant was convicted on June 1, 1998 for assaulting a police officer on February
20, 1992. Section 22.02 of the penal code was amended in 1993, and made aggravated
assault of a peace officer a second-degree offense. Unless otherwise noted, all citations
to Section 22.02 refer to the statute in place when appellant was convicted. 
2. Rule 34.6(f)(4) was amended effective January 1, 2003. Tex. R. App. P. 34.6(f). 
However, since rule 34.6(f)(3) is dispositive of this issue, we will not address the changes
to rule 34.6(f)(4). See Routier v. State, 112 S.W.3d 554, 571 n.22 (Tex. Crim. App. 2003). 
3. The Geesa definition of reasonable doubt reads:


A "reasonable doubt" is a doubt based on reason and common sense after
a careful and impartial consideration of all the evidence in the case. It is the
kind of doubt that would make a reasonable person hesitate to act in the
most important of his own affairs. 


Proof beyond a reasonable doubt, therefore, must be proof of such a
convincing character that you would be willing to rely and act upon it without
hesitation in the most important of your own affairs. 


Geesa v. State, 820 S.W.2d 154, 162 (Tex. Crim. App. 1991). 
4. The rule states: 


When part of an act, declaration, conversation, writing, or record is given in
evidence by one party, the whole on the same subject may be inquired into
by the other, and any other act, declaration, writing or recorded statement
which is necessary to make it fully understood or to explain the same may
also be given in evidence, as when a letter is read, all letters on the same
subject between the same parties may also be given. 


Tex. R. Evid. 107.
5. Although appellate courts may sometimes reform a judgment to give an appellant
proper jail time credit, the preferred practice is for trial courts to enter a nunc pro tunc order
to reflect proper jail time or for the appellant to file a writ of habeas corpus. See Ex Parte
Evans, 964 S.W.2d 643, 645 n.2 (Tex. Crim. App. 1998); Steinocher v. State, No. 01-02-00455-CR, 2003 Tex. App. LEXIS 9045, at *8 n.3 (Tex. App.-Houston [1st Dist.] Oct. 23,
2003, no pet.) (designated for publication); see also Tex. Gov't Code Ann. § 501.0081
(Vernon Supp. 2004).
6. Appellant committed involuntary manslaughter while out on bail for aggravated
assault of a peace officer.
7. Appellant also relies on Ex Parte Millard, 48 S.W.3d 190, 192 (Tex. Crim. App.
2001) to argue that he should receive credit time from August 1, 1995 through September
1, 1997 because he was erroneously paroled through no fault of his own on August 1,
1995. However, Ex Parte Millard was overruled on precisely this issue. See Ex Parte
Hale, 117 S.W.3d 866, 867 (Tex. Crim. App. 2003). 
8. Appellant was indicted on September 8, 1992 and tried on May 26, 1998.
9. Appellant committed this offense on September 20, 1992.
10. This motion was never ruled on. 
11. Appellant was apprehended on September 1, 1997.